748 So.2d 829 (1999)
Tommy GOREE a/k/a Tommy James Goree a/k/a Joe Worm a/k/a `Gee Tee', Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KA-00314-COA.
Court of Appeals of Mississippi.
August 17, 1999.
*830 Treasure R. Tyson, Attorney for Appellant.
Office of the Attorney General by W. Glenn Watts, Attorney for Appellee.
EN BANC.
THOMAS, J., for the Court:
¶ 1. Aggrieved by his conviction for aggravated assault in the Circuit Court of Lauderdale County, Tommy James Goree appeals on the following issues of error:
I. WHETHER THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF GOREE'S GANG ACTIVITY?
II. WHETHER THE TRIAL COURT ERRED IN ALLOWING EXPERT TESTIMONY ON THE ISSUE OF GOREE'S ALLEGED GANG INVOLVEMENT?
III. WHETHER THE JURY'S VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND WHETHER THE TRIAL COURT ERRED IN DENYING THE JNOV?
¶ 2. Finding error, we reverse and remand for a new trial. Our review, however, will be limited and will address only that issue which required reversal or discussion on the merits. All other issues lack merit and do not warrant discussion.

FACTS
¶ 3. In the early morning hours of July 14, 1997, a shooting occurred in a vehicle operated by Tommy J. Goree while in the parking lot of the Dixie Pak-A-Sak convenience store on 24th Avenue in Meridian, Mississippi. Officer Michael Hoadley of the investigation's division of the Meridian Police Department was working a surveillance detail directly across the street from the Pak-A-Sak at the time of the shooting due to the fact that several armed robberies had occurred at various convenience stores in the Meridian area. Officer Hoadley testified that while he sat in surveillance at the Pak-A-Sak, he observed a late 70's model Chevrolet Nova pull into the Pak-A-Sak parking lot. Two males approached the vehicle and began to engage in conversation with the occupants. Officer Hoadley was unable to identify the persons occupying the Nova due to his angle of view but testified that during the course of events he heard what appeared to be the sound of a gunshot. Officer Hoadley then observed the two males run from the Nova towards the store, at which time the Nova sped off down 24th Avenue.
¶ 4. Dwight Horne testified that sometime between 11:00 p.m. and midnight he went to the Pak-A-Sak for some snacks and a drink. Horne testified that he saw Tommy Goree drive up and that he and a friend, Michael Jimerson, walked over to Goree's car to talk with him about nothing in particular. Horne stated that Tammy Seals was also sitting in the vehicle behind Goree in the back seat. During their conversation, Goree asked Home for money, *831 to which Horne pulled out his pockets and stated that he did not have any money to give. Goree then grabbed Horne and stated to Home that he knew who he was. Goree then pulled Horne by his shirt with both hands into the car. Horne further testified that Seals then reached over the front seat and put a gun to the right side of his head. Luckily, Horne managed to either jerked away from Goree's grip or was pulled out of the car by Jimerson just before the gun, which Seals had been holding to his head, discharged and struck Goree in the leg. Horne and Jimerson then fled from the vehicle and ran towards the store. At trial, Horne identified Goree and Seals as the persons who had assaulted him in the Pak-A-Sak parking lot on July 14, 1997.

ANALYSIS

I.

WHETHER THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF GOREE'S GANG ACTIVITY?
¶ 5. Goree argues that the testimony elicited by the State on the issue of Goree's involvement with an area gang known as the Black Gangsters failed to pass muster under M.R.E. 403 and should have been ruled inadmissible by the trial court as irrelevant and unduly prejudicial. Goree argues that the State's use of his suspected gang affiliation for purposes of proving motive in the aggravated assault of Home was without substantial foundation and amounted to pure speculation and innuendo. During presentation of the State's case-in-chief, the prosecution elicited testimony regarding Goree's gang affiliation while questioning Walter Johnson, a friend of Goree who was present at the Pak-A-Sak during the assault of Home. After timely defense objection on the admission of the gang affiliation testimony, discussion was held on the admissibility of the proposed testimony under M.R.E. 404(b).
Q. Now when you left, pulled away well, let me ask you this. Are you and Mr. Goree and Mr. Williams and Ms. Seals, are y'all in any kind of organization together?
A. No.
Q. You're not?
A. No, sir.
BY MRS. TYSON: Objection as to relevance, Your Honor. I don't see what this has to do with anything.
BY THE COURT: Objection is overruled.
Q. Are you
BY MRS. TYSON: Your Honor, I would ask for a motion outside the presence of the jury at this time.
BY THE COURT: You want to be heard outside the presence of the jury?
BY MRS. TYSON: Yes, Sir.
BY THE COURT: Ladies and gentlemen, if I can get you one more time to return to the jury room, I will bring you back in just a moment.
(WHEREUPON, THE JURY WAS EXCUSED FROM THE COURT-ROOM AT 3:50 P.M. AND THE FOLLOWING WAS HEARD IN THEIR ABSENCE, TO-WIT:)
BY THE COURT: All right. Mr. Prosecutor, what is the purpose for this line of questioning?
BY MR. ANGELO: I'm wondering what his connection is to the defendant. And I think that there is a significant probability that all of these individuals are in a are gang members together, Your Honor.
BY MRS. TYSON: Your Honor
BY THE COURT: Well, just a minute. This witness has referred to the defendant as his brother. And there was some innuendo in the last witness' testimony that the victim was grabbed around the collar and pulled inside the car with the question like you know who I am, which could have a connotation you know my name or you know what *832 my status is in the community. Where are we headed? Is this a motive for the crime, gang related?
BY MR. ANGELO: Yes, sir.
BY MRS. TYSON: Your Honor, we ask that any references to gang organizations or affiliations organizations, whatever, be be denied that the District Attorney be allowed to mention this. I don't see what this has to do with the crime, why if, in fact it did happen. He has already testified that they're friends. They have been old friends. I don't see that any kind of gang affiliation or organization has any relevance to this crime.
BY MR. ANGELO: He's also testified that there were no guns in the car when, obviously, there was one. And another witness, Fred Williams, says that there were two or three guns in the car, including a shotgun.
BY MRS. TYSON: He very may have not known that there were any guns in the car. To his knowledge that may be true.
BY THE COURT: You are dealing with a 4.04(b) [sic] issue in my judgment. Let me ask the prosecution this. It has got to be more than innuendo. Are you are you have any witness that you anticipate that's going to testify that this shooting was in some way motivated by gang-related activity?
BY MR. ANGELO: Judge, I can't I got how can I we say how can we say whether it is gang related or not? I mean, other than other than the the people the occupants of the car being gang members?
BY MRS. TYSON: Well, then
BY THE COURT: Well, I assume
BY MR. ANGELO: Armed gang members, along with Tammy Seals, the the stated witness of the defendant who says that the reason they were armed that day was because they had some trouble with some gang from the east side.
BY MRS. TYSON: I don't think she used the word gang in her statement.
BY MR. ANGELO: Well, whether you use the word gang or not, some people from that's not the word she used, but some other people that they were having trouble with, that they were afraid of is why they were armed.
BY MRS. TYSON: Your Honor, I still I still ask that it not be allowed to be presented to the jury. It's extremely prejudicial, has no probative value.
BY THE COURT: Well, I don't know where we are headed as far as a motive for the crime question.
BY MR. ANGELO: Gang affiliation is not even necessarily 4.04(b) [sic] item. I mean, other than it certainly goes to bias. It certainly goes to witness credibility. I realize I've called this witness, but, I mean, he was, obviously, associated with the defendant.
BY MRS. TYSON: Your, Honor, I think he
BY MR. ANGELO: The defendant who is a the defendant who is a gang member, and then you have the stated witness of the of the defense who is going who said in her statement to the police that she was armed and they were armed that day because of problems that they were having with a gang with the gang from the other side of town.
BY MRS. TYSON: Your Honor, I think he is bringing the character of the accused in under 4.04(a) [sic]. We have not brought his character out, and I don't think the prosecution has any any reason to bring out the character of the accused.
BY THE COURT: Well, is being a member of a gang within the definition of a person's character or trait of character?
BY MRS. TYSON: I would certainly argue that it is, since most people do not *833 find it exactly good that the person would be in a gang.
BY MR. ANGELO: Depends on what status you equate that with, Judge. The fact that you are a member of the First Baptist Church, somebody asked you that on the witness stand, I mean, and you say that. But the fact that you are a member of Ducks Unlimited or something like that, some club, may or may not have any significance. But I think it shows
BY MRS. TYSON: Again, completely [ir]relevant to the crime.
BY MR. ANGELO: Let me finish if you please, before you interrupt me. The question is whether or not they have some nexus, the people in the car together, and as to what they were doing together, a group of gang members together armed. They had a problem, or were having a problems, with other persons certainly leads one to believe that they had weapons and were ready to use them against people that they perceived to be an enemy of that.
BY THE COURT: What is the difference, Treasure, if one is a member of KKK and the other one is a member of antiquated terminology Black Panthers or the Gangster Disciples or whatever you want to call it?
BY MRS. TYSON: My position is it's irrelevant to whether or not an aggravated assault was committed. The issue is whether or not Tommy Goree held him or shot at him while Tammy Seals was in the car. I don't think there was an issue as to gang-related activity.
BY MR. ANGELO: If it please the Court, I mean, they are saying that Tammy Seals did all of this on her own. Certainly, if there is a gang related thing, which I think the evidence will show, that that they are in gangs, that the various the relative status of each of the gang members has a great deal to do with whether or not she acted alone or not. Gang members, as a general rule, don't act on their own, they act on order, and I think that's significant.
BY THE COURT: Well, it's my intention at this point to overrule your objection. I think this evidence is admissible under 4.04(b) [sic] because I think it tends to show preparation, plan, intent and motive. I want a caveat with that, and that is this. That if you pursue this line of questioning, which I intend to let you do, and at the conclusion of this trial, there is no corroborating evidence of a gang motive in this alleged shooting, I will instruct the jury to disregard any evidence of inference of evidence that this may or may not have been gang-related activity. But I assume that from what you say that one of the witnesses, Ms. Tammy Seals, has given a prior statement.
BY MR. ANGELO: That's now, that's their witness, Judge.
BY THE COURT: I understand. And she has been subpoenaed today by the defense to call as a witness. But that is going to be my ruling at this point, and I will revisit it at the proper time on motion of the defense if there is not other evidence corroborating the issue of gang activity. But this witness has already referred to the defendant one time as brother and then denied he has any blood relationship with him. And there's inferential evidence already in the record about organized activity. I am going to overrule your objection at this point.
¶ 6. The State was thus allowed to pursue a line of questioning probative of whether Goree's gang affiliation with the Black Gangsters was a possible motive for the assault committed against Horne. During the State's continued questioning of Johnson on Goree's affiliations with a gang, Johnson repeatedly denied any knowledge of gang affiliation by Goree. When questioned about the meaning of Goree's tattoo bearing the letters BGD, Johnson denied knowing whether the tattoo was synonymous with the Black Gangster *834 Disciples. Similar testimony was elicited during the State's direct examination of Detective James Sharpe, who participated in the investigation. Detective Sharpe was questioned on the meaning of several of Goree's tattoos, specifically a tattoo of a six pointed star with the words G-E-E T-E-E, located on his outer left forearm. Defense counsel's objection as to relevance was again overruled; however, the trial court did grant defense counsel's request for a continuing objection. Detective Sharpe also stated that to his knowledge Goree's tattoos denotes gang affiliation and that the six pointed star bearing the words G-E-E T-E-E would be Goree's nickname within his gang and that the words Black Gangsters or BGD would designate an individual as a gang member.
¶ 7. The State rested following the testimony of Detective Sharpe, at which time the following discussion was held on defense counsel's motion for mistrial on the basis of M.R.E. 404(b) and 403.
BY MRS. TYSON: Your Honor, we have two motions at this time, a motion for a mistrial on the basis of Rule 4.03[sic] and 404(a). As far as any mention or references to gang activity, again, I see no relevance. I think its prejudicial effect outweighs any probative value. I don't think that is an issue in this case. The issue, I thought, was the matter of aggravated assault.
BY THE COURT: Any response to that?
BY MR. ANGELO: Judge, I don't I don't as we argued yesterday, I think that there is ample evidence in the record as to the defendant's being in a gang. That there was statements of these other individuals of the other individual who testified that considered himself to be more closely associated than just a friend of the defendant. And I think that certainly is ample evidence for the jury to determine that there is a connection.
BY MRS. TYSON: Again, I think its effect is extremely prejudicial and really has no value as far as this crime is concerned.
BY THE COURT: There is an issue under 4.03[sic] of a prejudicial effect versus probative value. I guess it goes without saying that evidence presented to a jury that the accused is or may be member of a gang is prejudicial. The rule says if its probative value is substantially outweighed by the danger of unfair prejudice, and I want to make a couple of observations before I make a ruling.
I don't know how some higher court may look at this, but as the trial judge it has been my experience, over the recent years anyway, when gang activity became more commonplace that when a case was presented in circuit court that was the result of gang activity, that generally the victims who may themselves have been participants in some rival gang would deny that during their testimony. And that the defendants and their witnesses, when they presented their case, they would likewise deny any gang affiliation or gang motive to the crime. There is a large, in my opinion, conspiracy of silence concerning gang activity by any and all participants in the gangs.
In this case this alleged crime appears to be so almost senseless. Accepting the State's evidence to be true, at midnight in the middle of Meridian, when this vehicle pulls up at the Dixie Pak-A-Sak, apparently, there are a couple of other members or other citizens walking by this car that the defendant was driving or in. And he held [sic] them over to the car and demanded money from Mr. Horne, if you accept the State's evidence to be true, and according to Mr. Horne's testimony, he knew Tommy J. Goree, and obviously Mr. Goree knew him. But according to Mr. Home, Mr. Goree repeats the phrase you know who I am. That has two connotations in my mind. One is that Mr. Home remembers who Tommy J. Goree is, maybe *835 from school days. It also has the connotations that you know who I am relating to I am a member of a rival gang, or at least has that inference. During the testimony of the witness, Walter Johnson, he let, in my judgment, slip his reference to the defendant as being his brother when in truth and fact there is, apparently, from his own testimony, no blood kinship or kinship by law to the defendant, that he referred to the defendant as a brother. The defendant has tattoos that an ordinary person would consider to be identifying him as a member of a gang. There is a question in this case, in my judgment, as to what is the real motive for this attempted robbery. There is an issue in the case, at least at this point, concerning weapons. Mr. Walter Johnson denies that there was any weapons in the vehicle. The police department found a loaded 9mm clip and a spent round in the vehicle. After Mr. Goree was shot in the leg, they did not travel directly to the emergency room of the hospital which was probably seven or eight blocks away, but went to Mr. Goree's sister's house. The inference from that can be that the weapon or weapons were disposed of at Ms. Goree's house before the defendant was transported to the emergency room.
All of that, in my judgment, relates to gang activity as being motive for this crime, and I think, in my considered opinion, that the probative value of the defendant being identified as a gang member is not outweighed or substantially outweighed by the danger or unfair prejudice. Based on those beliefs, that's why I overruled your motion concerning admission of that testimony. I am still of the same opinion, therefore, I don't think your motion for a mistrial is well taken. All right. Do you have any other motion you want to make while the jury is out.
¶ 8. During Seal's cross-examination in the defense's case-in-chief, questions were put to Seal on the issue of Goree's gang affiliation, to which, defense counsel objected on the grounds of relevance and prejudice. Those objections were also overruled. Seals was asked whether she and Goree were in a gang together and whether she knew the meaning of the tattoos located on Goree's arms. Seals denied any involvement in a gang or any knowledge of participation by Goree in a gang.
¶ 9. At the close of Goree's case-in-chief, the State called Detective Jeff Harper in rebuttal to Seal's and Johnson's denial of any involvement or knowledge of Goree's gang affiliations. Detective Harper testified in length as to his knowledge of gang activity and the meaning of Goree's tattoos. Detective Harper testified that the words Black Gangster, as depicted in Goree's tattoos, was an offset of the Black Gangster Disciples, a folk nation gang, nationally know to be associated with crime. Detective Harper further testified to the meaning of Goree's tattoo of a six-pointed star. Detective Harper stated that each point of the star had a respective significant identifier of love, life, loyalty, knowledge and understanding and that those identifiers were significant to the Folk Nation Gang or Black Gangster Disciples. Detective Harper stated that the words G-E-E T-E-E would be considered Goree's street name or moniker within the gang. As to Goree's tattoo of a dagger, Detective Harper opined that nationally known gangs tend to mark themselves as to what participation they have in the gang and that a dagger on the arm would signify some type of enforcer. Detective Harper concluded his testimony by stating that an enforcer would have rank over an 18 year old female which would fit the State's theory that Seals was acting under direct order of Goree in placing the gun to Horne's head.
¶ 10. The admissibility of evidence related to a defendant's prior bad acts is well established. Evidence of a person's character or a trait of his character is generally *836 not admissible under Mississippi Rule of Evidence 404(a).
RULE 404. CHARACTER EVIDENCE NOT ADMISSIBLE TO PROVE CONDUCT; EXCEPTIONS; OTHER CRIMES
(a) Character Evidence Generally. Evidence of a person's character or trait of his character is not admissible for the purposes of proving that he acted in conformity therewith on a particular occasion, except:
(1) Character of Accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;
¶ 11. Nor is evidence admissible to prove the character of a person to show that he or she acted in conformity therewith other crimes, wrongs, or acts which they may have committed, unless its admissibility is for purposes of showing proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
RULE 404. CHARACTER EVIDENCE NOT ADMISSIBLE TO PROVE CONDUCT; EXCEPTIONS; OTHER CRIMES
(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
¶ 12. Under the exceptions listed in 404(b), admission of evidence of other crimes, wrongs, or acts is admissible when its use is for purposes other than showing propensity or conformity. However, to be admissible under a 404(b) exception, the proposed evidence must first be of consequence to the determination of the action under Mississippi Rule of Evidence 401. Otherwise the proposed evidence is deemed inadmissible under Mississippi Rule of Evidence 402. Once the trial court has determined that the proposed evidence is admissible under 401 and a 404(b) exception further analysis must then be conducted to determine whether the probative value of the evidence offered under the 404(b) exception is outweighed by its prejudicial effect on the jury under Mississippi Rule of Evidence 403.
To be sure, evidence admissible under Rule 404(b) is also subject to the prejudice test of Rule 403; that is, even though the Circuit Court considered the evidence at issue admissible under Rule 404(b), it was still required by Rule 403 to consider whether its probative value on the issues of motive, opportunity and intent was substantially outweighed by the danger of unfair prejudice. In this sense Rule 403 is an ultimate filter through which all otherwise admissible evidence must pass.

Watts v. State, 635 So.2d 1364, 1368 (Miss. 1994) (quoting Jenkins v. State, 507 So.2d 89, 93 (Miss.1987)).
¶ 13. The Mississippi Supreme Court has addressed the very issue before us today in Hoops v. State, 681 So.2d 521 (Miss. 1996). The supreme court acknowledged that it would be "folly" to hold that "affiliation or membership with a street gang ... does not constitute a bad act as contemplated by Miss. R. Evid. 404(b)." Id. at 530. The court recognized that several jurisdictions have found that activities associated with street gangs can be probative on the issue of motive as was both suggested in Hoops and in the case sub judice. See State v. Romero, 178 Ariz. 45, 870 P.2d 1141, 1147-48 (App.1993) (citing United States v. Abel, 469 U.S. 45, 49, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984)); State v. Vickers, 159 Ariz. 532, 768 P.2d 1177, 1182 (1989) (evidence of membership in prison gang probative of bias); People v. Mendez, 221 Ill.App.3d 868, 164 Ill.Dec. 321, 582 N.E.2d 1265, 1267 (1991) (defendant's membership in gang relevant to motive for drive-by shooting against rival gang); People *837 v. Contreras, 144 Cal.App.3d 749, 192 Cal.Rptr. 810 (1983) (gang membership relevant to motive for assault and attempted robbery); State v. Garcia, 99 N.M. 771, 664 P.2d 969 (1983) (prison gang membership relevant to motive in stabbing inmate who had insulted gang); State v. Ruof, 296 N.C. 623, 252 S.E.2d 720 (1979) (defendant's association with motorcycle gang relevant to motive for shooting victim who had come into bar in gang's territory); People v. Hairston, 10 Ill.App.3d 678, 294 N.E.2d 748 (1973) (evidence of membership of defendant and victim in rival gangs relevant to drive-by shooting); John E. Theuman, Annotation, Admissibility of Evidence of Accused's Membership in Gang, 39 A.L.R.4th 775 (1985); United States v. Rodriguez, 925 F.2d 1049, 1053 (7th Cir.1991); State v. Campbell, 78 Wash.App. 813, 901 P.2d 1050, 1055 (1995); United States v. Santiago, 46 F.3d 885, 889 (9th Cir.1995).
¶ 14. However, in so recognizing that gang affiliation or membership may be probative on the issue of motive under the motive exception of 404(b), as was supported by numerous jurisdictions, the Hoops court also cautioned our lower courts to take care when making determinations on whether the probative value of evidence of gang affiliation or membership was substantial enough to outweigh its obvious prejudicial effect.
On the other hand, circuit judges must be quite careful in their assessment of such evidence. While evidence of affiliation or membership with a street gang can certainly be relevant under Miss. R. 404(b), as stated above, it also has the potential to be quite damaging in the eyes of a jury. To ensure that no unfair prejudice accrues to a defendant, a trial judge should administer the balancing test of Rule 403 under the Mississippi Rules of Evidence before admitting such evidence into the trial.
Hoops, 681 So.2d at 530.
¶ 15. Returning to the case sub judice, lengthy argument was held on two occasions, once after the initial reference to Goree's alleged gang affiliation was elicited during Johnson's testimony and again after the State had rested its case-in-chief in a motion for a mistrial. Argument was held on questions of 1) whether the evidence proposed on Goree's alleged gang affiliations was relevant to the crime charged, 2) whether the admission of the proposed gang affiliation evidence fit an exception under Mississippi Rule of Evidence 404, and 3) whether the probative value was outweighed by the prejudicial value of the prior bad act evidence. Our review, in view of the facts and circumstances present in the case before us today, has failed to produce any feasible exception to the admission of evidence relating to Goree's alleged gang affiliation under both our rules of evidence and our current state of the law in Mississippi.
¶ 16. The indictment charged that Goree had committed an aggravated assault against Horne in what appears, as was noted by the trial court, to have been a senseless act without any clear rationale or meaning. This is supported by both the testimony of the victim, Horne, and Goree's accomplice, Seals. However, the State failed to produce any testimony, except by innuendo, to support its theory that the crime against Home was in some way correlative to Goree's gang affiliation. At trial the State argued that the evidence of Goree's gang affiliation elicited during the testimony of Johnson was for the purpose of showing that all the persons who arrived at the Pak-A-Sak with Goree were in fact members of the same gang.
¶ 17. We recognize that a witness's affiliation with a gang could be relevant, under appropriate circumstances, to establish potential bias, particularly in situations involving crimes committed between rival gang members. However, that is not the case in the matter before us today or at least not the case as is indicated in the record. In addition, we fail to see how being a member of a gang ipso facto challenges that witness's credibility as was also *838 argued by the State at trial. The trial court did, however, raise concerns over the State's line of questioning on Goree's gang affiliation as far as motive for the crime in question, but nevertheless allowed the State to proceed under the 404(b) exceptions of preparation, plan, intent and motive. The trial court further stated that in allowing the prosecution leeway under 404(b), that "at the conclusion of the trial, there is no corroborating evidence of a gang motive in this alleged shooting, I will instruct the jury to disregard any evidence or inference of evidence that this may or may not have been gangrelated activity." However, this was not done.
¶ 18. We are not persuaded that the gang affiliation evidence admitted under 404(b) was supported with adequate corroborating evidence or foundation under the facts and circumstances as was presented in the record. We note that the State did, however, succeed in establishing a strong probability that Goree was in fact an active gang member of the Black Gangsters or at the very least had strong affiliations with them, but that, standing alone, has no connection to the crime.
¶ 19. Much more is required when such highly prejudicial evidence is sought to be admitted against an accused. In conducting the 403 balancing test, the trial court made several references to specific points of testimony and evidence touching on Goree's gang affiliation. Under the facts of the case sub judice, references by one witness to the accused as his "brother" when in fact there is no blood relationship between the two and statements by the accused tending to establish a self-proclaimed importance or elevated stature in the community does not, in and of themselves, create a link which overcomes the resulting prejudice when both instances are equally vague and broad enough to encompass a variety of meanings and contexts. The key issue remains whether Goree's gang affiliation was in some way related or linked to the crime charged. We note that the State could produce no witnesses or evidence with which to directly link Goree's gang affiliation to the crime as it was committed against Horne. Therefore, without more, any linkage between Goree's gang affiliation and the crime committed is the result of pure speculation and innuendo. We reverse and remand.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY IS REVERSED AND REMANDED FOR A NEW TRIAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, MOORE, AND PAYNE, JJ., CONCUR.