984 So.2d 352 (2007)
Jimmy DAO, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-01170-COA.
Court of Appeals of Mississippi.
December 11, 2007.
Rehearing Denied March 11, 2008.
*353 Glenn Sturdivant Swartzfager, Jackson, attorney for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
Before MYERS, P.J., IRVING, BARNES and ROBERTS, JJ.
IRVING, J., for the Court.
¶ 1. Jimmy Dao was convicted by a jury of aggravated assault and was sentenced by the Forrest County Circuit Court to serve twenty years in the custody of the Mississippi Department of Corrections. Aggrieved, Dao appeals and asserts (1) that the trial court erred in allowing the State to introduce evidence regarding his alleged gang affiliation, (2) that the trial court erred in allowing the State to question defense witnesses about an unrelated murder, and (3) that there is insufficient evidence to support his conviction.[1]
¶ 2. Finding no reversible error, we affirm.

FACTS
¶ 3. Around 10:00 p.m. on June 18, 2003, nine men in two vehicles, a Toyota 4-Runner and a Mercedes, were involved in an altercation after meeting at a stop light on Hardy Street in Hattiesburg, Mississippi. The altercation ended when Dao, a passenger in the Mercedes, fired a shot that struck the open front passenger door of the 4-Runner. A few months after the incident, Dao was arrested and charged with aggravated assault.
¶ 4. At trial, the State presented the testimony of Don Ladner, B.J. Fokakis, and Zachary Fairley.[2] The defense presented the testimony of three of the six occupants of the Mercedes: Craig Murrell, Taun Bui, and Dao. Donald Nguyen, Bao Dang, and Long Nguyen were also in the Mercedes on the night of the incident. Sometime after the incident, Long was murdered.[3]
¶ 5. Murrell testified that they were on Hardy Street when they noticed the 4-Runner in the next lane of traffic, traveling *354 in the same direction. He stated that Dao "flipped [the occupants of the 4-Runner] off," but did not give any explanation for Dao's doing so. At that point, the 4-Runner began to follow the Mercedes. Murrell testified that they had not signaled the occupants of the 4-Runner to follow them. He stated that when the 4-Runner began to do so, Long, the driver of the Mercedes, turned down 21st Street. Murrell further testified that they exited the Mercedes and that one of the occupants of the 4-Runner was already outside of the 4-Runner, holding a bat. The front passenger door of the 4-Runner was open. Murrell testified that the passenger swung the bat at Dao, but Dao dodged it. Murrell also testified that he heard a gunshot but that he did not see who fired the gun because he diverted his attention to a car that was coming from the opposite direction.[4]
¶ 6. On cross-examination, the trial court allowed the State, over an objection by the defense, to question Murrell regarding Long's murder. In support of its position that it should be allowed to question Murrell regarding Long's death, the State pointed out that Murrell was listed as an alibi witness for Donald in that particular murder case.
¶ 7. Bui corroborated Murrell's testimony but added that Dao fired a gun into the open door of the 4-Runner after the passenger from the 4-Runner swung the bat at Dao. Bui also testified that Long had handed the gun to Dao and that no one had exited the 4-Runner at that time. Bui further testified that no one got out of the Mercedes until after the occupants of the 4-Runner had exited.
¶ 8. Immediately following Bui's direct testimony, outside the presence of the jury, the State requested, and was granted, permission to cross-examine Bui regarding his gang affiliation. According to the State, the rationale was twofold: to show that Bui was biased in favor of Dao and to show that Bui had a motive to lie. The defense objected, arguing that the testimony should be excluded under Rule 403 of the Mississippi Rules of Evidence. Specifically, Dao's attorney argued: "I don't believe that portion of the rule applies in this specific case." The trial court allowed the questioning for the limited purpose of showing bias. Thereafter, during cross-examination, the State brought out that Bui, Dao, and Donald were members of the Junior Viet Boys gang at the time of the shooting.[5] The State asked Bui whether gang members were "supposed to always be there for . . . fellow gang members." Bui responded, "Yes, sir." Further, the State asked: "when a fellow gang member gets in any kind of difficulty, it's your honor and your duty to assist him in any way that you can. That's correct; isn't it?" Again, Bui responded, "Yes, sir."
¶ 9. Early in Dao's testimony the defense asked him whether he had ever been in a gang, and he responded that he had. As for the incident at issue, Dao testified that they had "gotten into a conflict with some guys in [a 4-Runner] at a red and green light in front of [The University of Southern Mississippi]." He testified that Fokakis, the person on the passenger side of the 4-Runner, flipped him off and that he responded by returning the gesture. He stated that the 4-Runner began following *355 them, so he flipped Fokakis off again. Dao testified that he suggested that Long turn off on 21st Street, instead of heading to Dao's house, because he did not want them to follow him to his house.[6] Long handed Dao a gun and Dao exited the vehicle as the occupants of the 4-Runner were exiting their vehicle. Dao testified that one of the passengers had a bat in his hand that he swung at Dao when Dao stepped forward. Dao stated, "[T]hat's when I pulled the gun out and fired the gun."
¶ 10. Despite Dao's admission that he fired the gun, he maintained that he did not aim at anyone. He fled the scene on foot. Despite efforts by law enforcement to locate him, Dao was not arrested until August 14, 2003, at which time he provided the police with a written statement concerning the incident.
¶ 11. On cross-examination, the State pointed out that Dao's written statement differed from his trial testimony. In his statement, Dao stated that his assailant, later identified as Fokakis, had gotten back in the vehicle before Dao fired the gun. However, as previously mentioned, Dao testified at trial that Fokakis was standing outside of the vehicle when Dao fired the gun. When pressed to explain this inconsistency, Dao stated that Fokakis was in the vehicle when he fired the gun but that another occupant of the 4-Runner was outside of the vehicle.
¶ 12. During further cross-examination, the State questioned Dao concerning Long as it had during its examination of Murrell. The State also questioned Dao about his membership in the Junior Viet Boys. Dao admitted that he had been a member of the gang but stated that he was no longer a member and that he was not a member at the time of the shooting.
¶ 13. Ladner, the first witness for the State, testified that as they were sitting at a red light, a Mercedes with numerous occupants pulled up next to their vehicle in the next lane of traffic, traveling in the same direction. According to Ladner, the music in the 4-Runner was loud, and they thought the occupants of the Mercedes were "banging their heads to the music [emanating from the 4-Runner]." Ladner also stated that one of the occupants of the Mercedes waved, and they thought they recognized the person, so Fokakis waved back. Further, Ladner stated that one of the occupants of the Mercedes pointed out of the window and motioned for them to pull over. They complied and turned off on 21st Street. Ladner testified that after they turned on 21st Street, Fairley stopped the 4-Runner about fifteen to twenty yards behind the Mercedes. Ladner testified that everyone remained in the 4-Runner. He also testified that a Vietnamese male with somewhat long, blond hair, whom he later identified as Dao, exited the back seat of the Mercedes.[7] Ladner stated that when Fokakis noticed that Dao was armed, he yelled something like, "He's got a gun." As the 4-Runner attempted to leave, Dao fired a single bullet that struck the passenger side door of the 4-Runner. As the 4-Runner sped away, it hit another vehicle that was approaching. Ladner testified that, after the accident, he went to a nearby residence, telephoned the *356 police, and reported the shooting incident.[8] He also testified that he provided a written statement to police, detailing his account of what transpired. On cross-examination, Ladner testified that he, Fokakis, and Fairley all played baseball; however, he stated that they did not have a baseball bat in the vehicle on the night of the incident.
¶ 14. The next witness for the State was Fokakis. His testimony was similar to Ladner's. He testified that when he noticed the occupants in the Mercedes attempting to get them to pull over, he told Fairley to pull over so they could see what the other men wanted. Fokakis stated that the Mercedes was about one hundred feet in front of their vehicle and that "before we could even get pulled up there, they [had] already jumped out of the car." Fokakis also testified that the occupants of the Mercedes began gesturing as if they wanted to fight. According to Fokakis, Dao then lifted his shirt, pulled a gun from under his belt, and fired a single shot through the door of the 4-Runner. Fokakis stated that the Mercedes left the scene before the police arrived and did not return. Fokakis gave police a written statement and later identified Dao as the shooter.
¶ 15. After Fokakis finished his testimony, the State called Fairley to the witness stand. Fairley relayed the same sequence of events as Ladner and Fokakis. Prior to trial, he had also given a written statement and, at some point, had identified Dao as the shooter.
¶ 16. Shane Tucker, the lieutenant in charge of the Hattiesburg Police Department's crime scene unit at the time of the incident, testified that the 4-Runner was taken to a wrecker yard and processed on June 23, 2003, five days after the shooting incident. He stated that he did not find a baseball bat or any type of weapon in the 4-Runner. However, on cross-examination, he stated that he did not know how many individuals had had access to the vehicle between June 18 and June 23. Officer Tucker also stated that he did not know where the items that were found in the 4-Runner were taken, or even if an inventory of the vehicle had been conducted. In addition, Officer Tucker admitted that he did not mention in his report that he had searched the 4-Runner for weapons.
¶ 17. Additional facts, if necessary, will be related during our analysis and discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES
1. Admission of Gang-Affiliation Evidence
¶ 18. "A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses [his] discretion so as to be prejudicial to the accused, [this] Court will not reverse [his] ruling." Jefferson v. State, 818 So.2d 1099, 1104(¶ 6) (Miss.2002) (quoting Hughes v. State, 735 So.2d 238, 270 (¶ 134) (Miss.1999)).
¶ 19. Dao argues that the trial court erred in allowing the State to introduce evidence regarding his affiliation with the Junior Viet Boys because the evidence was irrelevant "in that there was no evidence that the gang, the Junior Viet Boys, had taken an oath to lie for one another, nor was there any evidence that the incident *357 was the result of any gang activity."[9] Dao also argues that the evidence of gang affiliation was inadmissible under Rule 404(b) of the Mississippi Rules of Evidence because the State did not offer any evidence as to any of the permissible exceptions under the rule.[10] Finally, Dao argues that the trial court failed to conduct a balancing test, and that the probative value of the gang-affiliation evidence is substantially outweighed by the danger of unfair prejudice, resulting in the evidence being admitted in violation of Rule 403 of the Mississippi Rules of Evidence.[11] We address each of these issues in turn.
(a) Relevance and Applicability of M.R.E. 404(b)
¶ 20. Dao cites Dawson v. Delaware, 503 U.S. 159, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992) for the proposition that the testimony regarding Dao's and Bui's gang affiliation was irrelevant because the prosecution failed to lay the proper foundation linking gang membership with the shooting. Stated another way, Dao contends that his gang affiliation was irrelevant because the State failed to offer any evidence that the aggravated assault was gang related. We agree that the State did not offer any evidence that the assault was gang related or any evidence as to motive. Therefore, we agree with Dao that the gang-affiliation evidence was inadmissible to prove motive. However, our inquiry does not end here, because even if the evidence was inadmissible to prove motive or one of the exceptions listed in Rule 404(b), that does not mean that it was inadmissible for all purposes, as we make clear later in our discussion of the cases upon which Dao relies. We begin the discussion with Dawson.
¶ 21. In Dawson, a defendant who had been convicted of first degree murder argued that his First Amendment rights were violated during his sentencing proceeding by the introduction of evidence exhibiting his membership in the Aryan Brotherhood. The United States Supreme Court agreed and held that "Dawson's First Amendment rights were violated by the admission of the Aryan Brotherhood evidence . . . because the evidence proved nothing more than Dawson's abstract beliefs." Dawson, 503 U.S. at 167, 112 S.Ct. 1093. However, the Court also concluded that "the Constitution does not erect a per se barrier to the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment." Id. at 165, 112 S.Ct. 1093. As stated, we agree with Dao that there is no evidence that the incident in this case was gang related. Nevertheless, as we will explain later, the gang-affiliation evidence in this case served as proof of more than Dao's abstract beliefs. Therefore, we do not find Dawson applicable.
¶ 22. We find United States v. Abel, 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984) more analogous to the issue in this *358 case. In Abel, John Abel was convicted of bank robbery. At trial, Kurt Ehle, one of Abel's co-defendants, testified that Abel and Robert Mills, a defense witness, were members of a secret prison gang and that the tenets of the gang required its members to lie for one another. Ehle's testimony was offered by the prosecution to show that Mills was biased in favor of Abel. The district court allowed the testimony. The United States Court of Appeals for the Ninth Circuit reversed the district court and concluded that the testimony was admitted to show that Abel's and Mills's membership in the same gang "might cause Mills to color his testimony," as well as to show that "because Mills belonged to a perjurious organization, he must be lying on the stand." Id. at 48, 105 S.Ct. 465. The United States Supreme Court reversed the Ninth Circuit and held that "the evidence showing Mills'[s] and [Abel's] membership in the prison gang was sufficiently probative of Mills'[s] possible bias towards [Abel] to warrant its admission into evidence." Id. at 49, 105 S.Ct. 465.
¶ 23. At oral argument, Dao's attorney argued that Dawson implicitly overruled Abel. We disagree. The Dawson court acknowledged its holding in Abel by stating:
[In Abel], we held that the Government could impeach a defense witness by showing that both the defendant and the witness were members of the Aryan Brotherhood, and that members were sworn to lie on behalf of each other. We held the evidence admissible to show bias, even assuming that membership in the organization was among the associational freedoms protected by the First Amendment. Though Abel did not involve a capital sentencing proceeding, its logic is perfectly applicable to such a proceeding. We therefore conclude that the Constitution does not erect a per se barrier to the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment.
Dawson, 503 U.S. at 164-65, 112 S.Ct. 1093.
¶ 24. In Dawson, evidence was offered to show the defendant's beliefs in an abstract way, as the jury was only permitted to hear that Dawson was a member of a prison gang. The evidence was not offered to show that Dawson's crime was connected to his gang membership or to show a witness's bias. As such, the Court concluded that membership alone was not enough to make the evidence admissible. The jury in Abel, on the other hand, was provided with a description of the tenets of the gang of which Abel was a member. Therefore, the prosecution was permitted to show that, based on the tenets of the gang, it was more likely than not that Mills's testimony would be favorable to Abel.
¶ 25. Similarly, in this case, Bui testified on cross-examination by the prosecutor that gang members owe certain allegiances to one another:
Q. Now, as a matter of fact, there is [sic] certain allegiances that you're supposed to take when you become a gang member; is that correct?
A. Yes, sir.
Q. That's true; isn't it?
A. Yes, sir.
Q. And as a matter of fact, when a fellow gang member gets in any kind of difficulty, it's your honor and your duty to assist him in any way that you can. That's correct; isn't it?
A. Yes, sir.
*359 ¶ 26. Dao also points us to Hoops v. State, 681 So.2d 521 (Miss.1996). In Hoops, the Mississippi Supreme Court was presented with two questions: (1) whether gang membership or affiliation qualifies as an "act" as contemplated by Rule 404(b) of the Mississippi Rules of Evidence, and (2) whether a defendant's gang membership or affiliation is relevant in the prosecution of the gang member for the crime of aggravated assault. Id. at 529-30. Timothy Hoops was convicted of two counts of aggravated assault. Id. at 539. The State contended that the shooting was gang related and argued that Hoops's gang affiliation was relevant and probative to establish motive. Id. at 529. The court answered the first question in the affirmative, stating, "It would be folly for this Court to hold that affiliation or membership with a street gang such as this one does not constitute a bad act as contemplated by Miss. R. Evid. 404(b)." Id. at 530. The court also answered the second question in the affirmative, finding that the trial court did not err in allowing evidence of Hoops's gang affiliation to prove motive. Id.
¶ 27. We do not find Hoops helpful to Dao's position. Apparently, Dao believes that because the State did not offer any evidence linking his gang affiliation with the assault (thus no proof of motive) it was improper to admit the gang-affiliation evidence. We have already stated that the evidence was admitted to show that Bui was biased, not to show motive for the commission of the crime. Hoops does not stand for the proposition that if motive is lacking, gang-affiliation evidence is inadmissible for all purposes.
¶ 28. Dao next directs our attention to this Court's decision in Burroughs v. State, 767 So.2d 246 (Miss.Ct.App.2000). In Burroughs, William Burroughs was convicted of two counts of aggravated assault and two counts of simple assault after he and two other individuals were involved in an altercation with four college students who were affiliated with a fraternity, the members of which were referred to as the Pikes. At trial, Burroughs admitted to firing a weapon but claimed that he did so only after the Pikes initiated the gunfire. Id. at 248(¶ 5). However, the students denied being in possession of any weapons. Id. Burroughs sought to introduce evidence showing that the students had a motive to lie because their fraternity was on probation at the time of the incident and that being in possession of a firearm would have led to its charter being revoked. Id. at 249(¶ 8). Burroughs also argued that the trial court erred in refusing to allow the defense to bring out that the Pikes held contempt for local young men who were not college attendees, and referred to such persons as "GDIs" which means "gdindependents." Id. The trial judge ruled that the evidence had no probative value with regard to the material facts of the case, and we found no error in the trial judge's determination:
As the State's brief points out, the fact that the Pikes, in general, may have referred to the locals as GDIs is not probative with respect to the feelings of each individual member of the fraternal brotherhood. It was the credibility of the individual victims who were going to testify that was relevant and not the credibility of the Pikes, in general, as a fraternal organization.
Id. at 249-50(¶ 11).
¶ 29. Dao contends that "just as the credibility of the college fraternity members in general was not relevant in Burroughs, the street gang affiliations of Bui . . . in general [are] not relevant either." Dao's comparison of membership in college fraternities with membership in violent street gangs is misplaced. We see no such *360 comparison. Gang members are more likely to testify in favor of one another because the failure of a member to uphold the tenets of a gang could subject him to severe penalties, including death. We are not persuaded that the same can be said of college fraternity members. We therefore find Burroughs factually distinguishable from the case currently before us.
¶ 30. Finally, Dao cites Goree v. State, 748 So.2d 829 (Miss.Ct.App.1999). In Goree, Tommy Goree was convicted of the aggravated assault of Dwight Horne. Id. at 830(¶ 1). During the trial, the State, in an effort to prove a motive for the assault, elicited testimony regarding Goree's alleged affiliation with a street gang known as the Black Gangsters Disciples.[12]Id. at 835(¶ 9). Goree appealed and argued, inter alia, "that the testimony elicited by the State on the issue of [his] involvement with . . . the Black Gangsters failed to pass muster under M.R.E. 403. . . ." Id. at 831(¶ 5). In resolving the issue, this Court stated:
The indictment charged that Goree had committed an aggravated assault against Horne in what appears, as was noted by the trial court, to have been a senseless act without any clear rationale or meaning. . . . However, the State failed to produce any testimony, except by innuendo, to support its theory that the crime against Horne was in some way correlative to Goree's gang affiliation. At trial the State argued that the evidence of Goree's gang affiliation elicited during the testimony of Johnson was for the purpose of showing that all the persons who arrived at the Pak-A-Sak with Goree were in fact members of the same gang.

We recognize that a witness's affiliation with a gang could be relevant, under appropriate circumstances, to establish potential bias, particularly in situations involving crimes committed between rival gang members. However, that is not the case in the matter before us today or at least [is] not the case as is indicated in the record. In addition, we fail to see how being a member of a gang ipso facto challenges that witness's credibility as was also argued by the State at trial.
* * * *
We are not persuaded that the gang affiliation evidence admitted under 404(b) was supported with adequate corroborating evidence or foundation under the facts and circumstances as was presented in the record. We note that the State did, however, succeed in establishing a strong probability that Goree was in fact an active gang member of the Black Gangsters or at the very least had strong affiliations with them, but that, standing alone, has no connection to the crime.
Goree, 748 So.2d at 837-38 (¶¶ 16-18) (emphasis added).
¶ 31. We fail to perceive how Goree benefits Dao. In Goree, evidence of Goree's gang affiliation was admitted to show a motive for the crime without any proof tending to show that the crime was gang related. This Court reversed Goree's conviction because it found the linkage between Goree's gang affiliation and the crime too tenuous. Although we said in dicta that we failed to see how being a member of a gang ipso facto challenges a witness's credibility, we made clear that we were not dealing with a case of bias *361 and that in a proper case a "witness's affiliation with a gang could be relevant . . . to establish potential bias. . . ." Id. at 837(¶ 17). In today's case, unlike in Goree, the issue of the admissibility of gang-affiliation evidence to show bias is presented front and center. It was on this basis that the learned trial judge admitted the evidence of Dao's gang affiliation. This type of evidence is clearly permitted under Rule 616 of Mississippi Rules of Evidence.[13] Additionally, in Smith v. State, 733 So.2d 793, 801(¶ 37) (Miss.1999), the Mississippi Supreme Court held that the State may cross-examine a witness regarding his interest, bias, or prejudice in a case. Therefore, we find that the trial judge did not err in allowing the State to question Bui and Dao regarding their common affiliation with the Junior Viet Boys. The testimony concerning Bui's and Dao's membership in the Junior Viet Boys was probative of Bui's possible bias toward Dao.
(b) On-the-Record Balancing
¶ 32. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . ." M.R.E. 403. This point was discussed in Hoops where the court held that although evidence may be admissible under Rule 404(b), it must still "clear the hurdle" of Rule 403:
To be sure, evidence admissible under Rule 404(b) is also subject to the prejudice test of Rule 403; that is, even though the Circuit Court considered the evidence at issue admissible under Rule 404(b), it was still required by Rule 403 to consider whether its probative value on the issues of motive, opportunity and intent was substantially outweighed by the danger of unfair prejudice. In this sense Rule 403 is an ultimate filter through which all otherwise admissible evidence must pass.
Hoops, 681 So.2d at 530-31 (quoting Watts v. State, 635 So.2d 1364, 1368 (Miss.1984)). The Hoops court also held that prior to admitting gang-affiliation testimony, "a trial judge should administer the balancing test of Rule 403 under the Mississippi Rules of Evidence." Id. at 530.
¶ 33. Dao is correct that the trial judge never said that he found the evidence more probative than prejudicial. However, the trial judge heard arguments from both parties regarding the admissibility of the evidence prior to reaching the conclusion that it should be admitted for the limited purpose of showing bias.
¶ 34. In Hoops, the Mississippi Supreme Court upheld a trial judge's decision to allow gang affiliation testimony for the purpose of showing motive after the trial judge heard arguments from both sides. Id. at 531. The court held that "while the trial judge failed to use the `magic words' that he did not find the danger of unfair prejudice to substantially outweigh the probative value of this evidence, he implicitly made that determination." Id. "He heard arguments from both sides as to why the evidence was or was not substantially and unfairly prejudicial, and he made his ruling." Id. Thus, in light of Hoops, we find the trial judge's implicit determination sufficient.
(c) Limiting Instruction
¶ 35. Dao argues that the trial court erred in failing to instruct the jury that it was permitted to use the gang evidence only "to make determinations of credibility of those witnesses." In Brown *362 v. State, 890 So.2d 901, 913(¶ 36) (Miss. 2004), the Mississippi Supreme Court abandoned the requirement that trial judges issue a sua sponte limiting instruction when evidence is admitted for a limited purpose:
The burden should properly be upon the trial counsel to request a limiting instruction. This was our rule before Smith, in accord with Rule 105 of the Mississippi Rules of Evidence. The rule provides in pertinent part that "when evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." Miss. R. Evid. 105 (emphasis added). We struggled in Smith to require judges to issue the sua sponte ruling, since that would contradict "a rule so clear" as M.R.E. 105. 656 So.2d at 100. Today we abandon Smith's requirement that a judge issue a sua sponte limiting instruction and return to the clear language of Rule 105. The rule clearly places the burden of requesting a Rule 404(b) limiting instruction upon counsel. The rule is controlling, and to the extent that Smith and its progeny contradict that plain language they are overruled.
Dao did not request a limiting instruction. Therefore, this issue is procedurally barred, as it was not initially raised at the trial court level. Field v. State, 856 So.2d 492, 493(¶ 5) (Miss.Ct.App.2003) (citing Gardner v. State, 531 So.2d 805, 808-9 (Miss.1988)).
2. Admission of Evidence Regarding Long Nguyen's Murder
¶ 36. Dao argues that he was prejudiced by the State's questions regarding the murder of Long. The testimony regarding Long's murder, which occurred at Dao's mother's home, was clearly improper and should not have been presented to the jury. The only logical reason for the State to offer such testimony was to prejudice Dao in the eyes of the jury. Testimony that one of the occupants of the Mercedes on the night of the shooting had later been killed in the home of Dao's mother and that another occupant of the Mercedes had been accused in his murder had no place in the trial of this case. Nevertheless, there is overwhelming evidence, including Dao's own testimony, that when he fired the bullet into the door of the 4-Runner, he was not acting in self-defense. In support of our finding on this point, we set forth the exchange between the prosecutor and Dao during the prosecutor's cross-examination:
Q. Regardless of what happened or who caused it, the truth of the matter is at the time that you fired that pistol, by your own statement Mr. Fokakis had closed the door to that vehicle 
A. No, sir.
Q.  and was no longer a threat to you.
A. His door was still open.
Q. But you said he got in the SUV.
A. Yes, sir, but I did not say he closed the door.
Q. Oh, okay. So, in other words, he had retreated from your position. He had gone and got [sic] in the SUV and you didn't even give him a chance to even close the door before you fired.
A. Yes, sir.
Q. You didn't fire at this mysterious person that you're now claiming might be on the other side of the car. You're firing at Billy Fokakis because he was in that seat; wasn't he?
A. Yes, sir.

*363 Q. And at the time you fired at him, at that moment you had no fear from Billy Fokakis at all, did you?
A. Yes, I did.
Q. He was in his own seat. What was he going to do to you?
A. I don't know. He could have jumped back out.
Q. He could have, so you shot at him.
A. Not at him, sir.
Therefore, we find that the admission of the evidence regarding Long's murder was harmless error.
3. Sufficiency of the Evidence
¶ 37. In his final assignment of error, Dao argues that the evidence was insufficient to sustain his conviction. The centerpiece of his argument is that the State's evidence proved that he did not possess the required intent to commit aggravated assault. He argues that Officer Tucker's testimony concerning the trajectory and point of impact of the projectile with the 4-Runner proves that Dao was at the rear of the 4-Runner, or that the door to the 4-Runner was open when the shot was fired. He notes that all of the individuals who testified at trial agreed that he was in front of the 4-Runner when the shot was fired and argues that this evidence "leads to only one inescapable conclusion: that the door of the Toyota was open when the shot was fired and that Fokakis, the only victim alleged in the indictment, was not in the car when the shot was fired." Dao further argues that "[b]ecause Fokakis was not in the Toyota at the time [the shot was fired], the State did not prove that [Dao] possessed the required intent to attempt to injure Fokakis or anyone else for that matter."[14] We are unable to discern how Dao's and Fokakis's respective locations, as established by various witnesses, sheds light on the crucial issue: whether Dao attempted to cause serious bodily injury to Fokakis. This is especially true in light of Dao's testimony that Fokakis was seated in the 4-Runner when Dao fired the shot at the 4-Runner.
¶ 38. In Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005), the Mississippi Supreme Court held:
Should the facts and inferences considered in a challenge to the sufficiency of the evidence "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is for the appellate court to reverse and render. Edwards v. State, 469 So.2d 68, 70 (Miss.1985) (citing May v. State, 460 So.2d 778, 781 (Miss.1984)); see also Dycus v. State, 875 So.2d 140, 164 (Miss. 2004). However, if a review of the evidence reveals that it is of such quality and weight that, "having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient. Edwards, 469 So.2d at 70; see also Gibby v. State, 744 So.2d 244, 245 (Miss.1999).
Considering the evidence in the light most favorable to the verdict, we cannot conclude that reasonable jurors could not have found beyond a reasonable doubt that Dao was guilty of aggravated assault. Dao admitted *364 on cross-examination that Fokakis was seated in the 4-Runner when he fired the shot. Even if this Court were to believe that Fokakis was at some point wielding a baseball bat and that, at that point in time, Dao was afraid of being struck by the bat, Dao's own testimony reveals that Fokakis was not posing a threat when Dao fired the pistol. This issue is without merit.
¶ 39. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Dao also argues that the trial court erred in admitting the gang-affiliation evidence in violation of Rule 608(b) of the Mississippi Rules of Evidence which provides that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility . . . may not be proved by extrinsic evidence[,]" except in certain limited circumstances within the discretion of the trial judge. Because we find nothing in any of the trial judge's rulings on the gang-affiliation evidence that implicates this rule, we find no merit to this issue and will not address it further.
[2] Ladner and Fokakis were passengers in the 4-Runner, which was driven by Fairley.
[3] Long's body was found in Dao's mother's bed. He had died of a gunshot wound to the head. Donald Nguyen and an accomplice were charged with Long's murder. Dao testified that his mother and Long were involved in a romantic relationship.
[4] At this point, both vehicles immediately fled the scene, although the 4-Runner traveled only a short distance before crashing into an oncoming vehicle. One of the occupants of the 4-Runner then called the police.
[5] On redirect, Bui testified that he was no longer an "active" member of the Junior Viet Boys. Further, he stated that he had been inactive for about a year and a half.
[6] Dao testified that when the incident occurred they were en route to his home, but when he noticed the 4-Runner following them he decided not to go to his house because he had been shot at on three prior occasions, one of which occurred outside of his home.
[7] Prior to trial, Ladner had identified Dao from a lineup; however, he stated at that time that he was only eighty percent positive that Dao was the shooter.
[8] Ladner stated that he went to the residence after attempting to call the police from his cellular telephone, which kept "cutting out."
[9] Although the State argued that the evidence was admissible to show motive, the trial court determined that the evidence was admissible to show bias on the part of Bui.
[10] Rule 404(b) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
[11] Rule 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
[12] The trial court allowed the testimony under Rule 404(b) of the Mississippi Rules of Evidence. Id. at 838(¶ 17).
[13] Rule 616 of the Mississippi Rules of Evidence reads: "For the purpose of attacking the credibility of a witness, evidence of bias, prejudice, or interest of the witness for against any party to the case is admissible."
[14] Mississippi Code Annotated section 97-3-7(2)(a) (Rev.2006) provides: "A person is guilty of aggravated assault if he attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life."