727 So.2d 753 (1998)
Legrane LENOX a/k/a Legrane Lenox, Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-00622COA.
Court of Appeals of Mississippi.
December 8, 1998.
Rehearing Denied February 9, 1999.
Certiorari Denied April 8, 1999.
*755 George S. Shaddock, Pascagoula, for Appellant.
Office of the Attorney General by Scott Stuart, for Appellee.
Before BRIDGES, C.J., and HINKEBEIN and KING, JJ.
BRIDGES, C.J., for the Court:
¶ 1. Legrane Lenox was tried by a jury and convicted in the Circuit Court of Forrest County for the crime of armed robbery. The judge sentenced Lenox to thirty-five years in the Mississippi Department of Corrections. Lenox assigns five errors:
I. The trial court erred in failing to sustain Lenox's motion for a mistrial, following objection to a question asked by the State as to Lenox's alleged "gang membership in California."
II. The trial court erred in allowing certain testimony before the jury, over objection, as to Lenox's prior conviction on second degree robbery with a firearm in the State of California to the extreme prejudice of Lenox.
III. The trial court erred in granting, over objection, Jury Instructions S-2 and S-3, said instructions being in conflict with each other and S-3 not being found in the indictment.
IV. The jury verdict is against the overwhelming weight of evidence and is contrary to the law in this state.
V. The sentence is unusually harsh and constitutes cruel and inhuman treatment within the meaning of the federal and state constitutions and represents a violation of Lenox's constitutional rights.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Around 9:50 p.m. on March 27, 1995, Legrane Lenox, Jr. and Victor Denard Jackson entered the Jitney Jungle No. 34 located at 2800 Lincoln Road in Hattiesburg, robbing the store of $6,523, twenty-five books of twenty postage stamps, and two booklets of Jitney savings certificates. Lenox and Jackson were arrested on April 11, 1995, and indicted for armed robbery on May 25, 1995.
¶ 4. The following sequence of events were developed at trial:
Two Jitney Jungle customers placed Lenox at the store about 9:30 p.m. on March 27. Jimmy Henderson was entering the parking lot to shop at the Jitney Jungle No. 34, when he noticed Lenox suspiciously peering around the corner of the store. Later while waiting in the cashier line, Henderson noticed a red car with tinted windows slowly pass the front window several times. The passenger window was partially open and Henderson could see part of the passenger's face. When he left the store, Henderson noted the red car had a Marion County license plate.
¶ 5. Camille Soulier had finished her shopping and was conversing with store employees. Soulier noticed two black men wearing bulky clothing entering the store, one behind the other, walking so closely they were almost touching. Soulier positively identified the first man as Legrane Lenox, Jr. The shorter man following Lenox was later identified as Victor Denard Jackson. Soulier saw Lenox and Jackson walk toward a magazine rack located behind the last checkout counter.
¶ 6. The cashier, Jeff Bivins, saw Jackson and Lenox for the first time when they were approximately five to ten feet away from him. The men were clothed in long-sleeved *756 dark pullovers, dark loose fitting pants, and skull caps. Bandanas partially covered the face area. Only a small area of dark skin could be seen between the caps and bandanas.
¶ 7. As the men approached Bivins, Jackson raised a large shiny handgun and instructed Bivins to get down. Bivins saw Lenox jump over the customer service counter into the front office.
¶ 8. The grocery manager, Gary Brown, was talking on the telephone in the front office when Lenox came over the counter into the office. Lenox grabbed the telephone from Brown, hung it up, and demanded, "Give me the money." Brown stepped away from the safe. Lenox went to the unlocked safe, opened the door, and began raking the bundled money into a dark nylon bag with both hands. Lenox said, "Where's the rest of it?" Brown answered, "There is no more." Lenox responded, "Don't lie to me or I'll kill you." Brown repeated, "There is no more."
¶ 9. Lenox returned his attention to the safe, grabbed the cash box containing the money not bundled, and attempted to shove the box into the bag. When the cash box would not fit in the bag, Lenox left with the dark bag and the cash box tucked under his arm. Jackson and Lenox ran out the front door of the store.
¶ 10. Brown testified he saw Jackson pointing a shiny large caliber revolver in the direction of the office. Lenox did not display a gun.
¶ 11. Taken in the robbery were $6,523, twenty-five books of twenty postage stamps, and two booklets of Jitney savings certificates.
¶ 12. Det. Rusty Keyes interviewed Henderson and Soulier at the Hattiesburg Police Department. Both witnesses positively identified Lenox from a photo lineup.
¶ 13. On April 11, 1995, while executing a search warrant at 1412 Cherry Street in an unrelated matter, Officer Ted Sochia found Lenox hiding in a closet. Lenox testified he hid in the closet because he could not readily identify the men as police officers and he was frightened. Officer Sochia found a loaded Taurus .38 caliber revolver beside Lenox in the closet. Among the items recovered during the search of the residence were $656 from Lenox, $779 from Jackson, twenty-one books of twenty postage stamps, and ten rolls of pennies which were rolled by machine and bundled with a rubber band. The stamps and rolled pennies were found in a blue bag. Detective Keyes was called to the residence as the detective in charge of the investigation of the Jitney Jungle robbery.
¶ 14. Subsequently, Jackson and Lenox were arrested for the crime of armed robbery.
¶ 15. Richard Pierce, Lenox's cell mate at the Forrest County Regional Jail, testified at trial that Lenox openly boasted about his participation in the armed robbery at the Jitney Jungle.
¶ 16. Lenox called Theophilus Bucklew, an inmate at the jail, to impeach Pierce's testimony. Bucklew testified Pierce and Lenox had an altercation in jail, and Pierce had promised Lenox "it wasn't over yet."
¶ 17. Taking the stand on his own behalf, Lenox testified that he had arrived in Hattiesburg from Los Angeles, California, on March 21, 1995, to open a barber shop and record business with his brother, Victor Jackson. Lenox stayed with Jackson and Steve Runnels in a house Jackson was renting at 1412 Cherry Street.
¶ 18. Lenox testified he went to the Jitney Jungle No. 34 on March 21 to wire money to his daughter and on March 22 to wire money to a business associate. Both times Jackson drove Lenox to the store in a red Baretta with dark tinted windows owned by Tabitha Thomas, Jackson's girlfriend. On March 27, Lenox testified he was watching television at 1412 Cherry Street at 9:50 p.m., and knew nothing about the robbery. Two days after the robbery, Lenox sent four money orders totaling $950.
¶ 19. In rebuttal, Detective Keyes testified that no recording equipment, records, or barber tools were found at 1412 Cherry Street during the search of the residence.
¶ 20. The jury returned a verdict finding Lenox guilty of armed robbery, but were unable to unanimously agree on punishment. *757 Whereupon the trial judge sentenced Lenox to a term of thirty-five years in the Mississippi Department of Corrections.
¶ 21. Upon denial of his post-trial motion for a new trial, Lenox appeals his conviction and sentence.

LEGAL ANALYSIS AND DISCUSSION

I. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN FAILING TO DECLARE A MISTRIAL?
¶ 22. Lenox argues the trial court erred in denying his motion for a mistrial following his objection to the State's question about Lenox's alleged gang membership in California. Lenox contends the question was calculated to unduly prejudice the jury against him.
¶ 23. As its first question on cross-examination, the State asked: "Mr. Lenox, prior to coming here from California, what gang were you a member of?" Lenox immediately objected to the question and moved for a mistrial. The trial judge sustained the objection, overruled the motion for a mistrial, and instructed the jury to disregard the reference made to gang membership. The jurors indicated they would do so.
¶ 24. "Whether to declare a mistrial is committed to the sound discretion of the trial court." Johnson v. State, 666 So.2d 784, 794 (Miss.1995) (citing Brent v. State, 632 So.2d 936, 941 (Miss.1994)). "The failure of the court to grant a motion for mistrial will not be overturned on appeal unless the trial court abused its discretion." Johnson, 666 So.2d at 794 (citing Bass v. State, 597 So.2d 182, 191 (Miss.1992)). "[T]rial judges are peculiarly situated so as to decide (better and more logically than anyone else) when a trial should be discontinued." Bass, 597 So.2d at 191 (quoting Schwarzauer v. State, 339 So.2d 980, 982 (Miss.1976)). In addition, the Mississippi Supreme Court has stated:
Elementary to all trial proceedings is the proposition that the occurrence of any prejudicially incompetent matter or misconduct before a jury, the damaging effect of which cannot be removed by admonition or instructions, necessitates a mistrial. However, it is the well established rule in Mississippi that where a trial judge sustains an objection to testimony interposed by the defense in a criminal case and instructs the jury to disregard it, the remedial acts of thecourt are usually deemed sufficient to remove any prejudicial effect from the minds of the jurors. The jury is presumed to have followed the directions of the trial judge.
Walker v. State, 671 So.2d 581, 621 (Miss. 1995) (citations omitted).
¶ 25. In the case at bar, the trial judge instructed the members of the jury to "totally and wholly disregard" the reference to Lenox's alleged gang affiliation in California. Lenox contends the trial judge abused his discretion in denying the motion for a mistrial in that the prejudicial effect created by the reference to gang membership could not be tempered by an admonition or peremptory instruction to the jury.
¶ 26. "Absent unusual circumstances, where objection is sustained to improper questioning or testimony, and the jury is admonished to disregard the question or testimony, we will not find error." Wright v. State, 540 So.2d 1, 4 (Miss.1989). "[W]here the trial court [sustained appellant's objection and directed the jury to disregard the statement], it is presumed that jurors follow the instructions of the court so as to dissipate any prejudicial effect." Crenshaw v. State, 520 So.2d 131, 134 (Miss.1988).
¶ 27. We presume any prejudicial effect caused by the reference to gang membership on Lenox's right to a fair trial was cured by the trial judge's instruction to the jury. Lenox directed our attention to no "unusual circumstance" that would rebut that presumption. Therefore, it is the opinion of this Court that the trial court effectively removed any prejudice that might otherwise have been suffered by Lenox when the jury affirmatively indicated the improper question would not be considered. We hold that the trial judge did not abuse his discretion in not granting a mistrial. This assignment of error is without merit.

*758 II. DID THE TRIAL COURT ERR IN ALLOWING TESTIMONY ABOUT LENOX'S PRIOR CONVICTION?
¶ 28. Lenox next argues the trial court erred in allowing testimony about his prior conviction on second degree robbery with a firearm in the State of California.
¶ 29. Admissibility of evidence lies within the sound discretion of the trial court. Baine v. State, 606 So.2d 1076, 1078 (Miss. 1992). As an appellate court, our task is not to engage anew in a balancing process but rather to determine whether the trial court properly considered the matter and whether the trial court abused its discretion in weighing the factors in deciding to admit or deny evidence. Foster v. State, 508 So.2d 1111, 1118 (Miss.1987).
¶ 30. The record shows the trial court conducted a full hearing outside the jury's presence pursuant to M.R.E. 609 and under the guidelines of Peterson v. State, 518 So.2d 632 (Miss.1987). The trial judge considered Bogard v. State, 624 So.2d 1313 (Miss.1993), and found Lenox's previous conviction was probative of his credibility and would not have a prejudicial effect on the jury. Thus, the trial judge allowed Lenox to be questioned regarding his prior conviction in California for second degree robbery with a firearm. All other convictions were excluded.
¶ 31. Affirming the admissibility of a prior conviction in Bogard, the Mississippi Supreme Court stated:
"When a criminal defendant elects to take the witness stand in his own defense he is subject to being impeached under Rule 609, M.R.E., with evidence of prior convictions." The trial court found the conviction for armed robbery was probative with respect to the issue of credibility and that it had impeachment value. We hold the court did not abuse its judicial discretion in allowing the prosecution to bring out the mere fact of conviction for the purpose of impeaching the defendant's credibility as a witness in his own behalf.
Id. at 1316 (quoting Hawkins v. State, 538 So.2d 1204, 1206 (Miss.1989)).
¶ 32. In this case, the trial judge made an on-the-record determination that the probative value of the Lenox's prior conviction outweighed any prejudicial effect. The trial judge did not abuse his discretion in allowing the State to question Lenox regarding his prior conviction for second degree armed robbery. This assignment of error is meritless.

III. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING INSTRUCTIONS S-2 AND S-3.
¶ 33. Lenox argues the trial court erred in granting conflicting instructions, Jury Instructions S-2 and S-3. Further, Lenox contends the charge of aiding and abetting armed robbery was not found in the indictment; therefore, Jury Instruction S-3 should not have been given. We find no merit to this assignment of error.
¶ 34. Jury Instruction S-2, as amended, reads:
The Court instructs the jury that if you believe from the evidence in this case, beyond a reasonable doubt, that the defendant, LEGRANE LENOX, JR., on March 27, 1995, in Forrest County, Mississippi, while acting alone or in conjuction [sic] with another person, being then armed with a deadly weapon to-wit: a handgun, put Jeff Bivins and others in fear of immediate injury to his person, by the exhibition of said deadly weapon, and that LEGRANE LENOX, JR., acting alone or in conjuction [sic] with another, feloniously took and carried away from the said Jeff Bivins and others, $6,523.00, the property of Jitney Jungle, against the will and from the person of Jeff Bivins and by said fear of immediate injury to the person of said Jeff Bivins and others, then and in that event, LEGRANE LENOX, JR., is guilty of armed robbery and it is your sworn duty to so find.
¶ 35. Jury Instruction S-3 provides:
The Court instructs the jury that each person present at the time and consenting to and encouraging the commission of a crime, and knowingly, willfully and feloniously doing any act which is an element of the crime or immediately connected with it or leading to its commission is as much a *759 principal as if he had committed the whole offense with his own hand.
Therefore, if you believe from the evidence in this case beyond a reasonable doubt that the defendant, LEGRANE LENOX, JR., did willfully, knowingly, unlawfully and feloniously do any act which is an element of the crime of Armed Robbery or immediately connected with it or leading to its commission, then and in that event, you should find the defendant guilty as charged.
¶ 36. In reviewing jury instructions, this Court considers all instructions together to determine whether the jury is fully and fairly charged. Hull v. State, 687 So.2d 708, 722 (Miss.1996).
¶ 37. The supreme court has held that "an instruction is sufficient when it follows the language of the pertinent statute." Sanders v. State, 586 So.2d 792, 796 (Miss. 1991). Jury Instruction S-2 properly sets forth the elements of armed robbery as stated in Miss.Code Ann. § 97-3-79 (Rev.1994), and the standard of proof, i.e., beyond a reasonable doubt, the State must meet as to each element.
¶ 38. Lenox alleges Jury Instruction S-2 should not have been granted because the State failed to offer any direct proof of Lenox's role in the Jitney Jungle armed robbery. We find that the jury could reasonably infer from the circumstantial evidence presented that Lenox participated in the armed robbery. Thus, the circumstantial evidence presented was sufficient to support the giving of Jury Instruction S-2.
¶ 39. The supreme court in Tolbert v. State, 407 So.2d 815, 820 (Miss.1981), recognized that a conviction could be based on circumstantial evidence alone:
The question must be determined by a jury in each particular case within the principles prescribed by law; within these limitations, the power of circumstances to satisfy the understanding and conscience of the jury beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis consistent with innocence, is always the test of the sufficiency of circumstantial evidence.... [T]he sufficiency of circumstantial evidence ispeculiarly for the determination of the jury, "because it is always solemnly to be weighed and acted upon by their understandings and consciences, and is, from its very nature, the subject of inferences and conclusions in their minds," and that "a verdict, therefore, found on circumstantial evidence, will always be permitted to stand unless it is opposed by a decided preponderance of the evidence, or is based on no evidence whatever."
Id. at 820 (quoting Johnson v. State, 23 So.2d 499, 500 (Miss.1945)).
¶ 40. Lenox argues Instruction S-3 should have been denied because the indictment did not show on its face the charge of aiding and abetting. We reject this argument. The indictment charged Jackson and Lenox with the crime of armed robbery. Although Lenox did not himself display a gun, Jackson aimed a gun at employees and customers in the Jitney June No. 34, and Jackson pointed the gun in the direction of the office while Lenox removed the money from the safe at the Jitney Jungle No. 34.
¶ 41. Miss.Code Ann. § 97-1-3 (Rev.1994) provides:
Every person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such; and this whether the principal have [sic] been previously convicted or not.
¶ 42. "Any person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an `aider and abettor' and is equally guilty with the principal offender." Hoops v. State, 681 So.2d 521, 533 (Miss.1996) (quoting Sayles v. State, 552 So.2d 1383, 1389 (Miss.1989)). The evidence here sufficiently warrants the instruction on aiding and abetting. We find no merit to this assignment of error.

IV. WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 43. Lenox contends the jury verdict is against the overwhelming weight of *760 evidence and is contrary to the law in this state.
¶ 44. This Court's scope of review is limited. Findings of facts made by a jury, who are the sole judges of the credibility of the witnesses and conflicts in evidence, requires that this Court not set aside the jury's decision "where there is substantial and believable evidence supporting the verdict." Wash v. State, 521 So.2d 890, 896 (Miss. 1988). In ruling on whether the verdict is against the overwhelming weight of the evidence, as presented in Lenox's motion for a new trial, the trial judge should only grant the motion to set aside a jury verdict that he determines, in his discretion, to be contrary to the substantial weight of the evidence. See Wetz v. State, 503 So.2d 803, 812 (Miss. 1987); Burt v. State, 493 So.2d 1325, 1328 (Miss.1986). On review, this Court must accept all the evidence as true, taken in the light most favorable to the State, and not reverse the trial judge's ruling absent a finding of an abuse of his discretion. Smith v. State, 646 So.2d 538, 542 (Miss.1994).
¶ 45. Accepting as true the evidence presented at trial in the light most favorable to the State, we do not find that the trial court abused its discretion in denying Lenox's motion for a new trial. The State presented the testimony of two witnesses who identified Lenox as being at the Jitney Jungle No. 34 the evening of March 27. Soulier's description of the clothes worn by Lenox was consistent with the description of the clothes worn by the robber given by Bivins and Brown.
¶ 46. In addition, the State presented the testimony of Ronald Pierce, who testified that Lenox openly boasted of his participation in the armed robbery and gave details of how it was carried out.
¶ 47. The jury was also presented the testimony of Officer Sochia, who participated in the search at 1412 Cherry Street. That search yielded cash, rolled pennies, and twenty-one books of twenty postage stamps. Detective Keyes testified that Jackson's girlfriend owned a red Baretta with tinted windows and a Marion County tag. Lenox testified that Jackson frequently borrowed his girlfriend's car.
¶ 48. Although the jury was presented with the conflicting testimony of Lenox surrounding the events leading to his arrest on April 11, 1995, the determination of the credibility of the witnesses and the evidence was well within their province. Odom v. Roberts, 606 So.2d 114, 118 (Miss.1992).
¶ 49. Based on our standard of review of jury verdicts, we find that there was sufficient testimony to establish that Lenox took the cash and stamps from the safe at the Jitney Jungle No. 34 against the will of its employee, Jeff Bivins, via use of a deadly weapon, thereby supporting the jury verdict finding Legrane Lenox, Jr. guilty of the crime of armed robbery. Accordingly, we find that the lower court did not abuse its discretion in denying Lenox's motion for new trial. This assignment of error is, therefore, without merit.

V. WHETHER THE SENTENCE IS UNUSUALLY HARSH AND CONSTITUTES UNUSUAL AND CRUEL PUNISHMENT.
¶ 50. Lenox asserts that the sentence imposed by the trial judge is unusually harsh and constitutes cruel and inhuman treatment within the meaning of the federal and state constitutions and represents a violation of Lenox's constitutional rights.
¶ 51. The imposition of sentence is within the discretion of the circuit court. It is subject only to statutory and constitutional limitations. The supreme court has stated that "[s]entencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute." Hoops, 681 So.2d at 537.
¶ 52. Lenox was convicted of armed robbery. The maximum sentence under Miss. Code Ann. § 97-3-79 (Rev.1994)the statute defining the crime of armed robberyis imprisonment for life "if the penalty is so fixed by the jury." Where, as in the case sub judice, the jury is unable to agree on the penalty of imprisonment for life, the trial judge is charged with the duty to fix the penalty for any term not less than three years. By statute, the trial judge could sentence Lenox to a term of imprisonment up to one year less than his life expectancy.
*761 ¶ 53. Lenox was twenty-seven years of age at the time of trial. The trial court considered the actuarial tables and his authority to sentence Lenox to serve one year less than his life sentence, and thereafter sentenced Lenox to thirty-five years in the state penitentiary. We find the sentence imposed by the trial judge is within the statutory limits of § 97-3-79, and should not be disturbed on appeal. Accordingly, this assignment of error is without merit.
¶ 54. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF THIRTY-FIVE (35) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. FORREST COUNTY IS ASSESSED WITH THE COST OF APPEAL.
McMILLIN and THOMAS, P.JJ., and COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE, and SOUTHWICK, JJ., concur.