LEE, C.J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. Tyrone Gordon was convicted in the Holmes County Circuit Court of aggravated assault and sentenced to twenty years in the custody of the Mississippi Department of Corrections. Gordon was also indicted for murder; but the jury was split six to six, and a mistrial was declared as to the murder charge.
¶ 2. Gordon now appeals, asserting the following issues: (1) the verdict is against the overwhelming weight and sufficiency of the evidence, and (2) he was prejudiced by incompetent hearsay. Finding no error, we affirm the conviction and sentence.
FACTS
¶ 3. In September 2009, Jonathan Tillman and Gordon were at a club in Tchula, Mississippi, known as the Yellow Tree. An argument broke out over a girl. The testimony was conflicting whether it was Tillman and Kerry Head or Gordon and Head who were involved in the argument. The argument became heated, and the owner of the club asked the men to leave. They left without incident.
¶ 4. The next night, Gordon, Tillman, and LeMarie Smith went to a club in Thornton, Mississippi. Smith drove his car, which had an assault rifle in the back. Tillman carried a handgun with him. When they arrived at the club, Smith stayed in the car while Gordon and Tillman got out. Head and another man, Thomas Hall, were at the same club. When Head and Hall left the club, Gordon and Tillman got into Smith’s car and told Smith to follow Hall’s car. Smith followed, and Gordon grabbed the assault rifle from the back. When they caught up to Hall’s car, Gordon rolled down the front passenger’s side window and shot at Hall’s car. Hall’s car left the road and flipped several times. Hall died as a result. Head suffered gunshot wounds but survived.
DISCUSSION
I. SUFFICIENCY AND WEIGHT OF THE EVIDENCE
¶ 5. Gordon argues that the evidence did not support the verdict because the testimony against him was contradictory and came from accessories with motives to lie.
A. Sufficiency of the Evidence
¶ 6. A motion for a directed verdict challenges the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993). The Court reviews the trial court’s finding regarding the sufficiency of the evidence at the time the motion for a *201 directed verdict is overruled. Holloman v. State, 656 So.2d 1134, 1142 (Miss.1995). “[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005).
¶ 7. “A person is guilty of aggravated assault if he ... (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm.... ” Miss.Code Ann. § 97-3-7(2)(b) (Supp.2011). Gordon asserts that the State failed to prove he was the shooter and, thus, failed to prove he committed aggravated assault. He argues that he did not shoot at Hall’s car; rather, two of the State’s witnesses — Smith and Tillman — implicated him in the shooting in exchange for favorable sentences.
¶ 8. Smith was the first witness called by the State to testify. When the police came to his house on the evening following the shooting, Smith denied knowledge of the shooting. He told the police he was with his girlfriend in Jackson, Mississippi. A few days later, however, he was called to the police station and confessed his involvement. He pleaded guilty to being an accessory after the fact and was sentenced to a suspended five-year sentence. He testified that in exchange for his plea bargain he was required to testify at Gordon’s trial. At trial, Smith stated that Gordon had forced him at gunpoint to follow Hall’s ear. Later in his testimony, he retracted this statement and said that he was scared, but Gordon did not threaten him or point a gun at him. Smith also testified that he tried to talk Gordon out of shooting at Hall’s car. Smith stated he told Gordon, “man, let ‘em go, don’t kill 'em,” but Gordon responded, “f — k that, I ain’t letting s — t go.”
¶ 9. Tillman testified that he was with Gordon at the Yellow Tree and witnessed Gordon and Head exchange “some words.” He testified that the next night when they went to the club in Thornton, he had a .40-caliber gun with him, and there was a rifle in the trunk. He testified that as they were driving on Highway 49, chasing Hall’s car, he shot the .40-caliber gun out of the window twice at the woods in order to scare Hall. He stated that he wanted Hall “to go on down the road” because he was afraid of what Gordon might do. Tillman stated that after he shot the gun, Gordon reached across him into the trunk, picked up the rifle, and shot at Hall’s car. Tillman explained that there was access to the trunk because the back seat of the car had no back. He admitted at trial that he had initially lied to the police when asked for a statement. He told the police he was at Gordon’s house playing a game. He testified that this was the story Gordon had fabricated. A few days later, the police asked him to come in for further questioning. He went to the police station and confessed. When asked why he confessed, he said: “It was eating me up inside.” He pleaded guilty to conspiracy and was sentenced to five years with one year suspended.
¶ 10. Rickettia Washington, Hall’s distant cousin, testified that she witnessed the shooting. She stated that she was driving on Highway 49 from Tchula toward Yazoo City, Mississippi, around midnight when she saw a black Honda Accord and a red Chevrolet Caprice, which she recognized as Hall’s car, coming toward her on Highway 49. It looked to her like the two cars were racing. The black car was behind the red car and had its headlights off. Washington pulled off the road to avoid a head-on collision when the black car came *202 alongside the red car. She heard approximately three gunshots and saw “a little light” coming from the passenger’s side window of the black car. The red car then went off the road. She testified that she did not see who was shooting the gun. On cross-examination, Washington was asked to read from her statement to the police, which stated: “Whoever was on the passenger’s side, they eased out. They shot. And it was like he lost control of the car.”
¶ 11. Gordon asserts that the inconsistencies in these three witnesses’ testimonies when compared with their prior statements to the police were enough to grant a directed verdict in his favor. We disagree. Smith, Tillman, and Washington were cross-examined on the discrepancies in their testimonies. The jury was made well aware that Smith and Tillman admitted that they had initially lied about their involvement. The jury was also made aware that Smith and Tillman had received favorable sentences partly in exchange for their testimonies against Gordon.
¶ 12. It is well settled that “[i]t is the jury [that] determines the weight of the testimony and the credibility of the witnesses at trial....” Teasley v. Buford, 876 So.2d 1070, 1075 (¶ 8) (Miss.Ct.App.2004). Gordon’s theory of defense was that Tillman and Head had a disagreement, and it was only Tillman who had shot at Head and Hall. The jury was made aware of this defense. The jury chose to believe Gordon was a participant in the shooting. Viewing the evidence in the light most favorable to the State, we find that the jury could have found the elements of aggravated assault beyond a reasonable doubt. This issue is without merit.
B. Weight of the Evidence
¶ 13. A motion for a new trial challenges the weight of the evidence. Hawthorne v. State, 835 So.2d 14, 21 (¶ 31) (Miss.2003). When reviewing a denial of a motion for a new trial, this Court “will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18). “We will not set aside a guilty verdict for the reason that it is against the weight of the evidence, unless it is clear that the verdict is the result of bias, prejudice^] or is manifestly against the overwhelming weight of the evidence.” Flanagan v. State, 605 So.2d 753, 757 (Miss.1992). “Once the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged, short of a conclusion on our part that the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty.” Id. (quoting Dickerson v. State, 441 So.2d 536, 538 (Miss.1983)).
¶ 14. While Gordon is correct that the only incriminating evidence against him was the testimonies of Smith and Tillman, that is enough to sustain a conviction. The general rule regarding accomplice testimony is that “the uncorroborated testimony of an accomplice may be sufficient to convict an accused. However, the general rule is inapplicable in those cases where the testimony is unreasonable, self[-]contradictory[,] or substantially impeached.” Williams v. State, 32 So.3d 486, 490 (¶ 14) (Miss.2010) (quoting Ballenger v. State, 667 So.2d 1242, 1253 (Miss.1995)). “Clear law in the State of Mississippi is that the jury is to regard the testimony of co-conspirators with great caution and suspicion.” Id. at (¶ 12) (quoting Derden v. State, 522 So.2d 752, 754 (Miss.1988)). “Although granting a cautionary instruction regarding the testimony of an accomplice is within the trial judge’s discretion, such an instruction is required when the accomplice’s testimony is the sole basis for *203 the conviction, and the defendant’s guilt is not clearly proven.” Id. (citing Wheeler v. State, 560 So.2d 171, 173 (Miss.1990)).
¶ 15. The jury was instructed by the trial court to weigh the accomplices’ testimonies “with great care and caution and look upon it with distrust and suspicion.” No other eyewitness testimony was given as to the events of that night. Gordon presented one witness — his brother, Matt Gordon, an employee at the Yellow Tree— who testified as to the events at the Yellow Tree on the night before the shooting. Viewing the evidence in the light most favorable to the verdict, we find the verdict is not so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. This issue is without merit.
II. HEARSAY
¶ 16. Gordon argues that the testimony of Captain Sam Chambers of the Holmes County Sheriffs Department was unnecessary and inadmissible hearsay. Gordon also argues that Captain Chambers’s testimony violated the Confrontation Clause. See Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
¶ 17. Captain Chambers interviewed Tillman and Smith concerning the shooting. At trial, Captain Chambers was asked to summarize their statements. Gordon’s counsel objected each time Captain Chambers was asked to give a summary, but the objections were overruled. Captain Chambers recounted that according to Tillman, the altercation started at the Yellow Tree and continued the next night when the men saw Head at a club in Thornton. Gordon and Tillman approached Head at the club and “had some words.” When Head and Hall left the club, Gordon, Tillman, and Smith chased the men down in Smith’s car. Captain Chambers stated that according to Tillman, “[Gordon] was shooting out the front right passenger window with a rifle, and [Tillman] was on the back seat[,] and [Tillman] ... shot twice with a 40[-]caliber [firearm] out the window.”
¶ 18. As for Smith’s statement, Captain Chambers testified as follows:
[Smith] stated that he — when they was [sic] in Thornton, he was sitting outside in the car. [Gordon] and Tillman ran over there and jumped in the car and told him catch that Chevy that was going down the road. He said once he caught up with it, turned the lights off and shot — then they started shooting. And when he seen [sic] the car was leaving the road, he just turned around in the highway and headed back toward Thornton....
¶ 19. On appeal, Gordon argues that the trial court’s reason for overruling the objection was pretextual. He argues that the trial court allowed Captain Chambers’s testimony in order to bolster the otherwise weak testimonies of Tillman and Smith.
¶ 20. We cannot find that Captain Chambers’s testimony violated the Confrontation Clause because both Smith and Tillman were available for cross-examination. We also do not find the trial court overruled the objections for pretextual reasons. Mississippi Rule of Evidence 801(d)(1)(B) states that a statement is not hearsay if the “declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... consistent with the declarant’s testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.... ” The supreme court has held that “admission of a prior consistent statement of a witness where the veracity of the witness has been *204 attacked is proper but should be received by the court with great caution and only for the purpose of rebuttal so as to enable the jury to make a correct appraisal of the credibility of the witness.” Caston v. State, 823 So.2d 478, 489 (¶ 43) (Miss.2002) (quoting White v. State, 616 So.2d 304, 308 (Miss.1993)). Such a statement should not be elicited by the State prior to an attack on the witness’s credibility. Id. (citing Clemons v. State, 732 So.2d 883, 891 (¶ 32) (Miss.1999)).
¶ 21. At trial, Gordon’s attorney objected to Captain Chambers’s testimony on the basis that it was hearsay, cumulative, and irrelevant. The prosecutor countered that the statements were not hearsay because they were statements made by a co-conspirator. See M.R.E. 801(d)(2)(E). The trial court then overruled the objection. The trial court did not specifically state why Gordon’s objection was overruled. Captain Chambers’s testimony does not fall under Mississippi Rule of Evidence 801(d)(2)(E) as a statement made by a co-conspirator because this section requires the statement to have been made “during the course and in furtherance of the conspiracy.” Captain Chambers gave a summary of what happened the night of the crime; he did not testify as to specific statements made by Tillman and Smith in furtherance of the conspiracy. Regardless of the trial court’s reason for overruling the objection, “[a]n appellate court may affirm a trial court if the correct result is reached, even if the trial court reached the result for the wrong reasons.” Methodist Hosp. of Hattiesburg, Inc. v. Richardson, 909 So.2d 1066, 1070 (¶ 7) (Miss.2005).
¶ 22. Captain Chambers’s testimony was consistent with Smith’s and Tillman’s testimonies at trial, and it rebutted previous fabrications made by both witnesses. Both Smith and Tillman had already testified, and their credibility was attacked on cross-examination. We find that Captain Chambers’s testimony was properly admitted as it was not hearsay or a violation of the Confrontation Clause. This issue is without merit.
¶ 23. THE JUDGMENT OF THE HOLMES COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HOLMES COUNTY.
IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON AND RUSSELL, JJ„ CONCUR. BARNES AND MAXWELL, JJ„ CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. MYERS, J., NOT PARTICIPATING.