BARNES, J.,
for the Court:
¶ 1. Jamal Johnson was convicted on two counts of murder and received a sentence of life imprisonment in the custody of the Mississippi Department of Corrections (MDOC) for each count, with the sentences to run concurrently. He appeals his convictions and sentences, and finding no reversible error, we affirm.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. In the early morning hours of May 30, 2009, the Jackson Police Department was dispatched to investigate a shooting at the Summer Park Apartments in Jackson, Mississippi. Upon arriving at the crime scene, officers encountered Josland Jackson, a hysterical pregnant woman. When police entered the apartment, they saw the bodies of Quintyn Wilson and Fred Smith, the apartment’s residents, lying on the floor. Wilson had been shot in the head and was unresponsive. Smith, who had been shot twice, was gasping for air. Both men later died.
¶ 3. Wilson was Josland’s boyfriend and the father of her unborn child. According to her, the couple was in bed watching television when there was a knock at the apartment door. Smith answered the door, then knocked on the door of the bedroom and told Wilson someone was there to see him. Wilson grabbed a .45-caliber pistol from under his pillow and left the room, closing the door behind him. *719 Josland said she heard Johnson’s voice say, “Yeah, n* * * * *, didn’t I tell you I was going to get you?”
¶ 4. Josland heard sounds of a scuffle and two gunshots. Frightened, she hid in the bathtub; then she heard another shot. The door to the bedroom was flung open, and she saw Willie Wilson (“Willie”), a former school classmate, come into the bedroom. She claimed Willie ransacked the room and stole a shotgun. Josland heard Johnson call to Willie, saying, “Come on, man; come on, man.” Willie left the room, and after it became quiet, Josland went to the living room to see what had happened. There she saw Wilson and Smith lying on the floor. Although Wilson was unresponsive, Smith was still conscious and asked Josland to tell the police “it was Jamal and Willie.” She called the police, and upon their arrival, she exclaimed that Johnson and Willie were responsible for the shootings. During a police search, marijuana was found in Willie’s apartment, along with a 9-millime-ter pistol. It was later determined that Wilson and Smith were shot with a .82-caliber pistol; the murder weapon was never recovered.
¶ 5. The police arrested Johnson and Willie, and Johnson was indicted by a grand jury on two counts of murder. A five-day jury trial was held in June 2011.[1] At trial, Josland reiterated that she heard Johnson threaten Wilson before the shooting and that Smith had told her Johnson and Willie were responsible. Willie also testified for the prosecution. Willie explained that he and Johnson were smoking marijuana and playing video games when Johnson stated that he needed some money. Willie said Johnson knew Wilson sold marijuana and would likely have some money; so they decided to rob him. Willie claimed that after they arrived at Wilson’s apartment, Johnson shot both Wilson and Smith. Willie admitted to ransacking the bedroom; however, he claimed that he did not take a shotgun. He saw Josland hiding in the bathroom but kept quiet, afraid that Johnson would kill her. He also stated that Johnson “was rushing me to come on, come on.” Afterwards, Willie said they returned to his apartment and got cleaned up, and Johnson gave him $200 and told him to keep the marijuana until the next day. Two other witnesses, who had been incarcerated with Johnson after the murders, testified that Johnson bragged that he killed the two men and said he would have killed Josland, had he known she was there.
¶ 6. Testifying on his own behalf, Johnson denied that he was present in the apartment when Wilson and Smith were shot. Johnson lived in Summer Park Apartments with his father and had bought marijuana from Wilson in the past. Johnson stated that he and Wilson would occasionally “hang out” together and that, on the night of the murders, he was in Wilson’s apartment to buy marijuana. However, he contended that when he left the apartment, both Wilson and Smith were alive and well. Johnson said when he left the apartment, he saw Willie. Johnson claimed Willie was going to see Smith to collect money that Smith owed Willie. Johnson said Willie told him to go to Willie’s apartment and wait for him so they could smoke marijuana. However, Johnson forgot his mobile phone; so he went back to Wilson’s apartment. When he entered, he saw Wilson and Smith on the floor; Willie was ransacking the apartment. Johnson claimed he never went through the apartment or stole anything; he merely grabbed his phone, went to his *720 father’s apartment, and fell asleep. The police testimony corroborated that Johnson was asleep when they arrived at Johnson’s apartment shortly after the shootings, and that no money or drugs were found. However, the police did find evidence that Johnson sent a text message to someone immediately after the time of the murder, which stated, “[C]ome get me, I need you.”
¶ 7. A Hinds County Circuit Court jury convicted Johnson on both counts of murder, and he was sentenced to life in the custody of the MDOC for each count. The sentences are to run concurrently. Johnson filed a motion for a new trial, which was denied. On appeal, we find no reversible error and affirm.
DISCUSSION
I. Whether testimony concerning Johnson’s alleged gang membership was prejudicial.
¶ 8. Two witnesses who testified at trial, Terrell Williams and Samuel Kelly, had been incarcerated with Johnson. Each testified that Johnson had confessed that he had shot Wilson and Smith. Both men also stated that they were afraid for their lives, alleging that Johnson was a gang member. Johnson argues that testimony by these two witnesses regarding his alleged gang membership was prejudicial and should not have been admitted.
¶ 9. We review a circuit court’s admission of evidence for abuse of discretion. McCray v. State, 44 So.3d 1046, 1048 (¶ 11) (Miss.Ct.App.2010) (citing Miller v. State, 996 So.2d 752, 756 (¶ 12) (Miss.2008)). “[A circuit] judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, an appellate court will not reverse this ruling.” Id. (quoting Williams v. State, 991 So.2d 593, 597 (¶ 8) (Miss.2008)).
A. Williams’s testimony
¶ 10. Williams sent several letters to the district attorney regarding his willingness to testify against Johnson. On cross-examination, the defense questioned Williams about one of the letters, specifically whether he was offering his assistance in order to get leniency or avoid prosecution on pending criminal charges. The letter was admitted into evidence. On redirect, the State questioned Williams about another letter, which stated in part: “Jamal Johnson have told people that I was coming to Court on him and the Vice Lord got and hit on me and they trying to jump on me so my life is in danger so can y’all help me in my matter.” The defense immediately objected to the admission of this letter into evidence due the gang reference, but the circuit judge overruled the objection. He noted Williams’s letters had already been discussed on cross-examination, and the other letter had already been submitted by the defense. The circuit judge admitted the letter into evidence, concluding that letter’s probative value “outweighfed] the prejudicial effect of the statement contained in the letter.” Williams then read the above-quoted portion of the letter aloud and testified that he wrote the letter because he was afraid for his life and wanted to be moved from his current facility.
¶ 11. “Trial courts have the discretion to determine whether potentially prejudicial evidence possesses sufficient probative value.” Hudson v. State, 977 So.2d 344, 347 (¶ 17) (Miss.Ct.App.2007) (citing Jones v. State, 904 So.2d 149, 152 (¶ 7) (Miss.2005)). “Evidence of gang affiliation may be introduced in order to establish motive for the crime, or ‘interest, bias, or prejudice’ on the part of the witness.” *721 Bennett v. State, 18 So.3d 272, 278 (¶ 17) (Miss.Ct.App.2009) (citation omitted). Evidence of gang affiliation may also be admitted in order to tell the jury “the complete story of the crime.” Hudson, 977 So.2d at 349 (¶ 24).
¶ 12. Johnson cites Goree v. State, 748 So.2d 829 (Miss.Ct.App.1999), for the proposition that the proper foundation was not laid for this evidence, and as such, it should not have been admitted. In Goree, the circuit court had allowed testimony that the defendant was affiliated with a gang. Conducting a balancing test, the circuit court concluded that the testimony “relates to gang activity as being motive for [the] erime[.]” Id. at 835 (¶ 7). This Court found that the circuit court abused its discretion in admitting the evidence, holding:
Our review, in view of the facts and circumstances present in the case before us today, has failed to produce any feasible exception to the admission of evidence relating to Goree’s alleged gang affiliation under both our rules of evidence and our current state of the law in Mississippi.
[[Image here]]
We recognize that a witness’s affiliation with a gang could be relevant, under appropriate circumstances, to establish potential bias, particularly in situations involving crimes committed between rival gang members. However, that is not the case in the matter before us today or at least not the case as is indicated in the record.
Id. at 837 (¶¶ 15, 17).
¶ 13. As the State observes on appeal, Williams’s letter does not explicitly allege Johnson was a member of the Vice Lords gang. Williams merely stated that Johnson told some “people” Williams was going to testify and that the “Vice Lord” was going to “jump on” him. Thus, it is questionable whether this evidence does, in fact, allege gang affiliation.
¶ 14. Moreover, the State admitted Williams’s letters into evidence to show that Williams was afraid for his life while in prison and to explain why he chose to testify. The content of the letter was relevant to Williams’s credibility as a witness, which had been challenged by the defense on cross-examination. Although there is no Mississippi case exactly on point, the California Court of Appeals addressed a similar situation in People v. Olguin, 31 Cal.App.4th 1355, 37 Cal.Rptr.2d 596, 600 (1994). In that case, a witness testified that someone from the “Southside” gang had threatened him in an attempt to keep him from testifying against the defendant. The appellate court held that the testimony was admissible, stating:
A witness who testifies despite fear of recrimination of any kind by anyone is more credible because of his or her personal stake in the testimony. Just as the fact a witness expects to receive something in exchange for testimony may be considered in evaluating his or her credibility, the fact a witness is testifying despite fear of recrimination is important to fully evaluating his or her credibility. For this purpose, it matters not the source of the threat.
[[Image here]]
Regardless of its source, the jury would be entitled to evaluate the witnesses] testimony knowing it was given under such circumstances.... A witness who expresses fear of testifying because he is afraid of being shunned by a rich uncle who disapproves of lawyers would have to be evaluated quite differently than one whose fear of testifying is based upon bullets having been fired into her house the night before the trial. The trial court acted well within its discre *722 tion in insuring the jury would have such evidence and would properly evaluate it.
Id. at 601 (internal citation omitted). Thus, we agree with the circuit court that the probative value outweighed any prejudicial effect. Nothing in Williams’s letter “so prejudiced the defense so as to affect the outcome of the case.” See Robert v. State, 52 So.3d 1233, 1244 (¶ 37) (Miss.Ct.App.2011) (failure to redact defendant’s statement regarding his gang affiliation was not prejudicial under the totality of the circumstances).
¶ 15. Accordingly, we find the circuit court did not abuse its discretion by admitting Williams’s letter into evidence.
B. Kelly’s testimony
¶ 16. Kelly, another inmate who had been incarcerated with Johnson, testified that Johnson was “part of a gang.”
Q. And why are you in protective custody?
A. I’m scared of Jamal.
Q. State it again.
A. I’m scared of Jamal.
Q. And why are you scared of Jamal?
A. Because of things I know he’s done and then he’s part of a gang.
Defense counsel immediately objected to Kelly’s testimony and moved for a mistrial. The circuit judge overruled the motion but instructed the jury to disregard the testimony.
¶ 17. In Hoops v. State, 681 So.2d 521, 527 (Miss.1996), a witness testified that Timothy Hoops wore clothing that was specific to a certain gang. Like the present case, Hoops’s defense counsel moved for mistrial, which was denied by the circuit judge. Noting that the judge ordered jurors to disregard the witness’s remarks, the Mississippi Supreme Court found that “no serious or irreparable damage resulted from [the witness’s] remarks.” Id. at 528. “Since the jury is presumed to have followed the admonition of the trial judge to disregard [the witness’s] remarks, there is no merit to Hoops’s contention that the remarks constituted reversible error.” Id. at 529.
¶ 18. Similarly, in Lenox v. State, 727 So.2d 753, 757 (¶ 23) (Miss.Ct.App.1999), the defense objected to questioning regarding the defendant’s alleged gang membership and moved for a mistrial. The circuit court sustained the objection, overruled the motion for a mistrial, and instructed the jury to disregard the remarks. Id. This Court held that “any prejudicial effect caused by the reference to gang membership on [Legrane] Lenox’s right to a fair trial was cured by the [circuit] judge’s instruction to the jury.” Id. at (¶ 27).
Absent unusual circumstances, where objection is sustained to improper questioning or testimony, and the jury is admonished to disregard the question or testimony, we will not find error. Where the [circuit] court sustained appellant’s objection and directed the jury to disregard the statement, it is presumed that jurors follow the instructions of the court so as to dissipate any prejudicial effect.
Id. at (¶ 26) (internal citations omitted); see also Buckley v. State, 772 So.2d 1059, 1063 (¶ 11) (Miss.2000) (Questioning by prosecutors regarding the defendant’s alleged gang affiliation was not reversible error, as the circuit court sustained the objection and instructed the jury to disregard.).
¶ 19. Like these cases, the circuit judge immediately instructed the jury to disregard Kelly’s remarks upon the defense’s objection. Accordingly, we do not find that the admission of Kelly’s testimony regarding Johnson’s alleged involve *723 ment with a gang constituted reversible error, as we presume that the jury followed the circuit judge’s instructions to disregard the comment.
II. Whether the verdict was against the overwhelming weight of the evidence.
¶ 20. “[T]his Court ‘will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.’ ” Gordon v. State, 76 So.3d 198, 202 (¶ 13) (Miss.Ct.App.2011) (quoting Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005)). However, a verdict will be set aside if it “is the result of bias, prejudice, or is manifestly against the overwhelming weight of the evidence.” Id. (quoting Flanagan v. State, 605 So.2d 753, 757 (Miss.1992)). Johnson claims that the evidence failed to prove that he was the person who shot Wilson and Smith. He highlights all the evidence against Willie, including the marijuana and gun found in Willie’s apartment. He testified that the men had already been shot when he returned to the apartment.
¶ 21. However, Josland, who was well acquainted with Johnson, stated that she heard Johnson threaten Wilson right before shots were fired. She also testified that Smith told her, as he was dying, “Tell them it was Jamal and Willie.” When the police arrived, she told them: “I’m telling you, they did it. I seen Willie and I heard Jamal.”
¶ 22. Furthermore, Willie testified that Johnson fired the shots that killed Wilson and Smith. The gun found in Willie’s apartment was not the same caliber as the gun used to shoot the two men, and Willie claimed that Johnson asked him to keep the money and drugs until the following day. Witnesses Williams and Kelly also testified that Johnson bragged to them that he killed the two men, and Johnson threatened their lives if they testified against him. Williams stated:
Jamal told me him and Willie went to Summer Park. They went to somebody’s—Q’s house and Big Boy’s house, and he had shot Q in the head, and Big Boy tried to come to him, and he shot Big Boy twice in the head. He told me Willie searched the left side of the house, but Willie seen—he told me Willie seen some girl in the bathroom. He said if Willie would had told him about the girl, he would have killed the girl too.[2]
Kelly testified:
Jamal said that when Q got off the couch, that’s when he shot Q. He said Big Boy was trying to go for the door, and when Big Boy went for the door, he shot him one time, he hit the ground, and he shot him again. He said Willie went into one room, and he went into the other room. Willie had got the money, and Jamal had got the weed, and on their way out Willie went around and got the 9 [millimeter] from the couch. They went to Willie’s house where Jamal gave Willie some of the weed and took off with the rest of the weed and the money.
¶ 23. While Johnson’s testimony contradicts this evidence, “the jury is the sole judge of the weight of the evidence and the credibility of the witnesses.” Lenard v. State, 77 So.3d 530, 539 (¶ 37 (Miss.Ct.App.2011) (citation omitted). “Conflicts in the evidence are for the jury to resolve.” Id. We find that the overwhelming weight of the evidence supports the verdict, and affirm the circuit court’s denial of Johnson’s motion for a new trial.
*724 ¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF COUNTS I AND II, MURDER, AND SENTENCES OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS ON EACH COUNT, WITH THE SENTENCES TO RUN CONCURRENTLY, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ„ CONCUR.

. Johnson was also indicted for hindering prosecution and for displaying a firearm during the commission of a crime; however, a mistrial was entered on those two charges.

. "Q" refers to Wilson. "Big Boy” is Smith's nickname.